IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LANDFALL TRUST LLC,  )<br>    Plaintiff,  )<br>  )<br>        v.  )<br>  )<br>FIDELITY NATIONAL TITLE  )<br>INSURANCE COMPANY  )<br>    Defendant.  )<br>  ) | Civil Action No. 3:22cv194 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) ("Motion to Dismiss") (ECF No. 6). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will deny Defendant's Motion to Dismiss (ECF No. 6) as to Count I and grant the Motion as to Count II.

**I. BACKGROUND**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or plaintiff's legal conclusions. *Id*. Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

**A. The Henry's Island Development**

In 2002, real estate developers (the "Developers") sought to develop property in Lancaster County, Virginia, known as "Henry's Island." (Compl. 1, ECF No. 1.) The Developers recorded a "Declaration of Covenants, Conditions and Restrictions for Henry's Island" ("Declaration," ECF No. 1-1), which included attached plats that showed the development area split into Lots 1 through 10, including the relevant subdivided Lots 9 and 10 (ECF No. 1-2). As part of that development, the Developers subdivided the property into multiple lots, created land use restrictions, and provided easements for roads, common areas, and utilities. (Declaration 5–17.)[1] The Declaration also created the Henry's Island Homeowners Association (the "HOA") for "enforcing the provisions of this Declaration." (Declaration 3, 5.) Such provisions conditioned sale of the lots on certain "easements, restrictions, covenants and conditions, which are imposed for the purpose of protecting the value and desirability of, and which shall run with the land." (Declaration 2.)

Along with Plots 1 through 10, the Declaration's attached plats also depict two different sets of septic drain fields. (ECF No. 1-2.) The "Primary Drainfield" abuts Lots 7 and 8, and the "Reserve Drainfield" and Lot 10 are separated by several hundred feet. (*Id.* 3, 4.) Relevant to these drain fields, the Declaration states:

> The Primary and Reserve Drainfield areas as identified on the Subdivision plat shall be used solely for drainfields for the respective lots. [The Developers] reserve[] the right to grant the surface use of the area on the plat designated "Primary Drainfield Area = 1.16 ac. +/-" [sic] to the Owners of Lot 7 and Lot 8. The Owners of Lots 7 and 8 shall not interfere with the use of these sites as drainfields and shall plant no trees or shrubbery on these sites without the approval of the Lancaster County Health Department and the ACC. No driveways, playgrounds other improvements shall be constructed on these sites. The Owners of Lots 7 and 8 shall maintain the surface areas of the Primary Drainfield Area in a manner consistent with good property management. The respective Owners of the Lots served by these sites shall have the right to repair and maintain their drainfields, but the Owner effecting such repair shall return the surface of the site to the condition it was in prior to such

---

[1] All page numbers referring to documents in the record refer to such documents' page numbers as provided by CM/ECF, and not necessarily to the documents' internal numbering.

2

> repair. Declarant reserves the right to grant the surface use of the Reserve Drainfield Area to the adjacent property owner(s) under the same conditions.

(Declaration 10.) Further along, in Section 6.01, titled "Utilities and Drainage," the Declaration states:

> [The Developers] reserve[] unto itself, its successors and assigns, a perpetual easement and right of way on, over, and under that portion of each Lot, the Common Drive and the Community Area as [Developers] shall deem necessary for the establishment of drainage ways across such property and within twenty (20) feet of the right of way line of the Common Drive or boundary line of any public right of way and within seven and one-half (7 1/2) feet of any other boundary line of such Lot, Common Drive and Community area to construct, maintain, replace, and use utility lines and facilities or other public conveniences as may be necessary or desirable to serve the Subdivision, provided, however, that such rights shall not unreasonably interfere with the construction of structures. . . . These easements and rights expressly include the right to cut any trees, bushes or shrubbery or to take any other action reasonably necessary to provide economical and safe utility installation and to maintain reasonable standards of health, safety, and appearance.

(Declaration 14.)

**B. The Title Insurance Policy**

In 2018, Plaintiff Landfall Trust, LLC ("Landfall Trust" or "Plaintiff") purchased Lots 9 and 10 on Henry's Island. (Compl. ¶¶ 6, 9.) Defendant Fidelity National Title Insurance Company ("Fidelity" or "Defendant") issued an owner's policy of title insurance ("Insurance Policy" or "2018 Policy," ECF No. 1-3) to Plaintiff regarding those lots. (Compl. ¶ 9.) In its "Covered Risks" section, the Insurance Policy insured, in part, against "[t]itle being vested other than as stated in Schedule A"; "[a]ny defect in or lien or encumbrance on the Title"; and "[u]nmarketable title." (Insurance Policy 9.) In the "Conditions" section, the Insurance Policy listed several subheadings, one of which read:

> 9. LIMITATION OF LIABILITY
> (a) If the Company establishes the Title, *or* removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim *of* Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have

3

fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

(Insurance Policy 12.)

"Title" is defined in the Insurance Policy as "[t]he estate or interest described in Schedule A." (Insurance Policy 11.)

"Schedule A" to the Insurance Policy stated:

1. Name of Insured:
   Landfall Trust, LLC
2. The estate or interest in the Land that is insured by this policy is:
   Fee simple
3. Title is vested in:
   Landfall Trust, LLC
4. The Land referred to in this policy is described as follows:
   **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF[.]**

(Insurance Policy 2.) Exhibit A in the Insurance Policy contained the description of "the Land," as quoted below in its entirety:

All those two certain lots or parcels of land lying and being in Bayside Magisterial District, Lancaster County, Virginia containing 2.15 acres and 2.25 acres, more or less, respectively and being more particularly shown and described on a plat of survey dated March 23, 2018 made by B.L. Stallings Land Surveying, LLC, entitled 'Plat Showing Lots 9 and 10 Henry's Island Prepared for Conveyance To Landfall Trust, LLC', a copy of which is recorded in the clerk's Office of the Circuit Court of Lancaster County, Virginia as Instrument Number 180000542.

Further Together with a proposed 50 foot easement for ingress and egress and utilities as shown as "b" proposed 50 foot easement for ingress, egress and utilities as shown as "A" and the existing 25 foot easement recorded in Plat Book 7 at Page 21B for ingress and egress adn [sic] all other purposes beneficial to the use and enjoyment thereof, from the existing easement to Lot 9 as shown on the aforesaid plat of survey.

> Further together with a perpetual appurtenant easement of rightof [sic] way for ingress and egress and all other purposes beneficial to the use and enjoyment thereof, over and across Island Pines Drive and Windfall Lane extending to and from the property herein conveyed and Virginia State Route 698 as shown on the aforesaid plat of survey.

(Insurance Policy 3.) It is undisputed that this property description does not include any mention of the provisions regarding the septic system and drain fields contained in the Declaration. (Mem. Supp. Mot. Dismiss 6, ECF No. 7; Mem. Opp'n Mot. Dismiss 8, ECF No. 11.)

Finally, the Insurance Policy contained several exceptions to coverage. (Insurance Policy 4–5.) Relevant to this case, the Insurance Policy stated that it

> does not insure against loss or damage . . . which arise by reason of . . . Terms, provisions, restrictions, conditions, easements, liens, assessments, developer rights, options, rights of first refusal and reservations contained in instrument recorded as [the Declaration] . . . .

(*Id.* 4.)

### C. The Crotty Contract

On November 16, 2021, Plaintiff entered into a contract (the "Crotty Contract", ECF No. 1-4) to sell Lots 9 and 10 to Jesse Crotty for $1,381,050. (Compl. ¶ 10.)[2] Before the Crotty Contract closed, Crotty sought a title insurance policy—also with Defendant. (Compl. ¶ 12.) Pursuant to that request, Defendant issued a formal commitment, known as a "binder," stating that:

> Title to the fee simple estate or interest in the land described or referred to in this commitment is at the effective date hereof vested in:
>
> > Landfall Trust LLC as to [Lots 9 and 10] . . . .

(First Binder 3, ECF No. 1-5). Subsequently, Defendant withdrew that binder, and issued a second binder, which asserted that:

> Title to the fee simple estate or interest in the land described or referred to in this Commitment is at the effective date hereof vested in:

---

[2] The Court notes that the attached Crotty Contract (ECF No. 1-4) appears to list the "Purchase Price" as $1,550,000.

5

> Landfall Trust LLC as to [Lots 9 and 10]
>
> . . .
>
> [The HOA] as to drainfield easement appurtenant to [Lot 9][.]

(Second Binder 2, ECF No. 1-6). Specifically, the Second Binder added an entire new paragraph describing the easement that was included in neither the First Binder nor the Insurance Policy:

> Further together with a perpetual appurtenant easement for a septic force main within a 20 foot easement adjacent Windfall Lane to a 15 foot utility easement extending from Windfall Lane in an easterly direction along the southern edge of the "Primary Drainfield Area = 1.16 Ac. +/- " as shown on a plat of survey entitled "PLAT SHOWING CONSOLIDATION AND ADJUSTMENT OF BOUNDARY LINES LOTS 1 THROUGH 10 AND COMMUNITY AREA 'HENRY'S ISLAND' SECTION ONE (FORMERLY KNOWN AS 'ISLAND PINES SECTION ONE)" prepared by Norman L. Sutton, L.S., dated October 19, 2001, last revised April 24, 2002, a copy of which is of record in the aforementioned Clerk's Office in Plat Cabinet 7, Pages 21A and 21B to drainfield for Lot 9 (formerly Lot 10) as shown on a plat of survey entitled "REVISED DRAINFIELD EASEMENT PLAT FOR 'HENRY'S ISLAND' SECTION ONE" prepared by Norman L. Sutton, L.S., dated November 6, 2002 and recorded in the aforesaid Clerk's Office in Plat Cabinet 7, Page 30A and together with an appurtenant easement over and across the above mentioned drainfield area for the installation, construction, operation and maintenance of a septic system drainfield.

(*Id.* 3.) The "issuance of the second binder meant [Plaintiff] was unable to convey to Crotty all of the property [Plaintiff] was obligated to convey under the terms of the Crotty Contract." (Compl. ¶ 15.) Plaintiff, Defendant, and Crotty unsuccessfully attempted to resolve this dispute. (Compl. ¶¶ 17–20.) Crotty eventually requested a release from the Crotty Contract, and Plaintiff therefore requested Defendant to provide coverage or to provide an accurate description of what Plaintiff owned, per the terms of the Insurance Policy. (Compl. ¶¶ 21–23.) Defendant provided a blanket determination that "coverage is afforded, in part, and denied, in part," without any specification as to which aspects of Plaintiff's claim were approved or denied. (Compl. ¶¶ 24–25.) Ultimately, after mediation, Plaintiff "was forced to concede that Crotty had identified title problems" and released Crotty from the Crotty Contract. (Compl. ¶¶ 27–28.) After continued efforts to resolve

its outstanding claim dispute with Defendant regarding coverage under the 2018 Policy (Compl. ¶¶ 29–30, Plaintiff commenced this litigation.

## II. PROCEDURAL HISTORY

On April 10, 2022, Plaintiff filed a Complaint, asserting two counts. First, Plaintiff claimed breach of contract, asserting that Defendant violated the Insurance Policy because Defendant "failed to perform [its] duty imposed upon it by the 2018 Policy." (Compl. ¶ 40.) Specifically, Defendant failed to either compensate Landfall for its losses related to the muddied state of its title to Lots 9 and 10, or to cure the relevant title questions "in a reasonably diligent manner." (Compl. ¶¶ 35–40.) Second, Plaintiff claimed negligence, asserting that Defendant negligently performed title searches and produced inaccurate legal descriptions of the property owned by Plaintiff. (Compl. ¶¶ 43–44.) On May 5, 2022, Defendant responded with the Motion to Dismiss (ECF No. 6), seeking to dismiss both counts. Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss on June 6, 2022 (ECF No. 11), and Defendant filed a Reply on June 13, 2022 (ECF No. 13).

## III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

7

of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

In a diversity action, federal courts must apply the choice of law rules of the forum state. *United Gov't Sec. Officers of Am. v. Special Operations Grp., Inc.*, 436 F. Supp. 2d 790, 792 (E.D. Va. 2006) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, Virginia is the forum and Virginia law dictates that "[a]ll insurance contracts on or with respect to

the ownership, maintenance or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth." Va. Code Ann. § 38.2-313. Moreover, the Choice of Law provision in the Insurance Policy designates Virginia law as controlling, as Virginia is where the property in question is located. (Insurance Policy 13.) Thus, Virginia law applies.

### IV. ANALYSIS

**A. Breach of Contract (Count I)**

In Count I, Plaintiff alleges, albeit convolutedly, that Defendant had an obligation pursuant to the Insurance Policy to insure against the enumerated risks in the Covered Risks section of the Insurance Policy. (*See* Compl. ¶ 35.) Namely, Plaintiff alleges that Defendant had a duty to compensate Plaintiff for losses "sustained or incurred by [Plaintiff] by reason of: 1. Title being vested other than as stated in Schedule A; 2. Any defect in or lien or encumbrance on the Title; defects, liens, or encumbrances on the title; 3. Unmarketable title." (*Id.*; *see* Insurance Policy 9.) Plaintiff alleges that Title is vested other than as stated in Schedule A of the Insurance Policy because the Second Binder states "that the land is vested in both Landfall and in the [HOA]," whereas Schedule A made no mention of any vested interest held by the HOA. (Compl. ¶ 37.) Plaintiff also alleges that there is an encumbrance or defect in title because Defendant "has 'written out' the ownership of the drain fields from the legal description in the [Insurance Policy]." (Compl. ¶ 38.) Further, Plaintiff alleges that title to the land in question was "unmarketable" within the meaning of the Insurance Policy, as evidenced by Plaintiff's inability to close on the Crotty Contract. (Compl. ¶¶ 28, 39.) Finally, Plaintiff alleges that Defendant's actions fall outside the Limitation of Liability provision of the Insurance Policy, as Defendant failed to resolve the issues preventing the Crotty Contract from closing in time to prevent the sale from falling through.

(Compl. ¶¶ 30, 36, 40.) Thus, Plaintiff alleges that Defendant failed to "remove[] the alleged defect, lien or encumbrance, or cure[] the lack of a right of access to or from the Land, or cure[] the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method." (Compl. ¶¶ 34, 36, 40; Insurance Policy 12.) Lastly, as a result of the foregoing, Plaintiff alleges that it suffered losses as a result of Defendant's breach. (Compl. ¶ 32.)

Defendant argues that Plaintiff fails to state a claim for breach of contract because Plaintiff's claim only concerns property (the drain fields) located outside the scope of the 2018 Policy. (Mem. Supp. Mot. Dismiss 9–10.) Additionally, Defendant contends that the Insurance Policy "excepts from coverage any condition created by the [] Declaration, which includes the drainfield areas and any easements related to them." (*Id.* 10–11.) Defendant's arguments delve into the merits of Plaintiff's claims and thus are not appropriate for the Court to consider at this stage. In opposition, Plaintiff argues that the Declaration's definition of "Lot" includes a "right[] to the [septic] drainfields," (Mem. Opp'n Mot. Dismiss 3), and that such right has not changed in the absence of an amendment to the Declaration. (*Id.* 4–5.) Plaintiff also contends that the description of the property in the Insurance Policy is inaccurate because "it does not describe all of the interests that Landfall owns based on the [Declaration]." (*Id.* 6.) Plaintiff contends that because Defendant has issued conflicting descriptions of the property in the First and Second Binders, the Defendant must bear the risk of any erroneous property descriptions. (*Id.* 6–10, 14–16.) Plaintiff further contends that Defendant cannot claim an exception to coverage because Plaintiff's "loss does not 'arise by reason of' the existence of the drainage field rights"; rather, Plaintiff argues that the "problem here is that [Defendant] did not draft the legal description in Schedule A so as to unambiguously convey to [Plaintiff] all of its rights under the [Declaration]." (*Id.* 10.)

10

The Court finds that Defendant's first argument fails because the absence of any reference in the 2018 Policy to drainfields, encumbrances, or other land interests is the very root of Plaintiff's grievance. (Compl. ¶¶ 9, 14, 37–38.) Beyond Plaintiff's factual allegations to that point, the Court declines to engage in a substantive analysis of the 2018 Policy at this stage. As to Defendant's second argument, the Court is not persuaded that a motion to dismiss is the appropriate time to engage in an interpretation of the 2018 Policy. Thus, the only question remaining is whether Plaintiff has presented sufficient factual allegations to state a claim for breach of contract under Virginia law.

In Virginia, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

Here, the Court finds that Plaintiff has plausibly alleged a legally enforceable obligation, to wit: Defendant owed Plaintiff an obligation to pay out insurance proceeds if the events enumerated in the Covered Risks section of the Insurance Policy transpired. (Compl. ¶ 35; *see* Insurance Policy 9.)

Further, Plaintiff has plausibly alleged breach of this obligation, insofar as conditions in the Covered Risks section of the 2018 Policy were met. Plaintiff alleges three ways in which the conditions were met. First, Plaintiff plausibly alleges that the Second Binder contains a description of the land and vested interests that does not match the original description found in Schedule A and Exhibit A of the Insurance Policy, and therefore title is vested other than as stated in Schedule A.[3] (Compl. ¶ 37.) Plaintiff next alleges that the second alternate condition was met because

---

[3] The Court ignores Plaintiff's legal conclusions purporting to "establish" that Plaintiff's factual allegations satisfy the conditions listed in the Covered Risks and other sections of the 2018 Policy. The Court merely considers the underlying factual allegations.

11

fidelity "wr[ote] out" ownership of the drainfields tied to the lots in question, as there is no reference to Plaintiff's rights in the off-property drainfields associated with Lots 9 and 10 in the 2018 Policy, and thus there is a defect in or encumbrance on the title to the property described in the 2018 Policy.  (Compl. ¶¶ 7–8, 38; Insurance Policy 2–3.)  Finally, Plaintiff plausibly alleges that the issuance of the Second Binder and the inclusion of the HOA easement prevented the Crotty Contract from closing, ultimately leading to Plaintiff's inability to sell the land, and thus title became "unmarketable" within the meaning of the Insurance Policy.  (Compl. ¶¶ 15–25.)

The Court also finds, and the Defendant does not contest, that Plaintiff has plausibly alleged that Defendant failed to either remedy the title problem or pay out to cover Plaintiff's losses in accordance with the Insurance Policy.  (Compl. ¶ 34.)  Lastly, the Court finds that Plaintiff has plausibly alleged that Plaintiff suffered harm and injury in the form of monetary losses as it was not compensated for the losses of the Crotty Contract, nor did it receive the insurance payouts from Defendant.  (Compl. 12–13.)

Accordingly, based only on the facts alleged by Plaintiff and the documents attached to the Complaint, the Court finds that Plaintiff has sufficiently alleged facts that, taken in the light most favorable to Plaintiff, "state a claim to relief that is plausible on its face."  *Ashcroft*, 556 U.S. at 678.  Accordingly, the Court denies Defendant's Motion to Dismiss as to Count I.

### B. Negligence (Count II)

In Count II of the Complaint, Plaintiff asserts that Defendant negligently performed title searches and negligently produced legal descriptions of the Property.  (Compl. ¶ 43–44.)  Defendant contends that the source of duty rule or the economic loss rule provides that Plaintiff's remedy is only in contract, therefore Plaintiff cannot recover in tort, and this claim should be dismissed.  (Mem. Opp'n Mot. Dismiss 11–12.)  Plaintiff argues that it can seek tort remedies

should its contract claim fail, and that the source of duty or economic rule does not apply because Defendant's obligation to search title does not appear in the Insurance Policy. (Mem. Supp. Mot. Dismiss 17–18.)

The source-of-duty rule and economic loss rule "establish when tort claims, contract claims, or both may be brought under Virginia law." *Selective Ins. Co. of the Se. v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 414 (E.D. Va. 2020). The source-of-duty rule, for instance, marks off "the boundaries of civil liability" by precluding a party from recovering in tort from a defendant's breach of a contractual duty. *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255–56 (Va. 2019). Thus, "tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required [the contracting party] to do it anyway." *Id.* at 255. In other words, claims that merely involve "allegations of negligent performance of contractual duties" are "not actionable in tort." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). "A tort action cannot be based solely on a negligent breach of contract." *Id.*

The economic loss rule is similar: "[W]hen a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Filak*, 594 S.E.2d at 613. Like the source-of-duty rule, the economic loss rule distinguishes between tort and contract claims: "The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations." *Id.* Thus, "[r]ecovery in tort is available only when there is a breach of a duty 'to take care for the *safety* of the person or property of another.'" *Sensenbrenner v. Rust, Orling & Neale, Architects,*

*Inc.*, 374 S.E.2d 55, 58 (Va. 1988) (quoting *Blake Const. Co. v. Alley*, 353 S.E.2d 724, 726 (Va. 1987)).

In *Selective Insurance*, for example, a corporation sued its insurance company via a counterclaim that alleged, in part, that the insurance company committed professional negligence. 458 F. Supp. 3d at 412, 414. The court found that the source-of-duty and the economic loss rules precluded such a claim. *Id.* at 417. The court reasoned, in part, that there is no "separate tort duty that an insurer owes to its insured" arising out of the insurance relationship. *Id.* at 416 (quoting *Metro Life Ins. v. Forman-Hubka*, No. 1:15CV12, 2016 WL 10489865, at *3 (E.D. Va. Mar. 28, 2016)).

In the instant case, both the source-of-duty and economic loss rules preclude Plaintiff's negligence claim for Defendant's alleged failure to properly perform title searches on and produce accurate descriptions of the property Plaintiff owned. The source-of-duty rule precludes such a claim because Defendant's duty to Plaintiff to perform the title search and produce the legal description of Lots 9 and 10 arose solely out of the Insurance Policy. Plaintiff fails to identify any independent duty in tort that Defendant owes to Plaintiff regarding these tasks. Absent the existence of the Insurance Policy, Defendant would have no obligation to produce the title searches and the property descriptions. *See Selective Insurance*, 458 F. Supp. 3d at 416. Specifically, the "Covered Risks" portion provides insurance against a loss from "[a]ny defect in or lien or encumbrance on the Title." (Insurance Policy 9.) In short, Plaintiff's negligence claim merely involves "allegations of negligent performance" of the Insurance Policy's obligations. *See Richmond Metro. Auth.*, 507 S.E.2d at 347.

While admitting that "there is no clear binding authority in Virginia" on the "question of other duties owed to Landfall," Plaintiff conclusively and unpersuasively states that "the obligation

14

to search the title does not appear in the insurance policy," and that there is "another source of duty" that allows the negligence claim to exist independently of the breach of contract claim. (Mem. Opp'n Mot. Dismiss 17 (quoting *Richmond Metro. Auth.*, 507 S.E.2d at 347).) Plaintiff, however, does not inform the Court, nor cite any authority in support, of what that other source of duty is. In fact, Plaintiff's only cited authority on this point is that "neither party is bound [u]nless both are bound." (*Id.* 18 (citing *American Agric. Chem. Co. v. Kennedy & Crawford*, 48 S.E. 868 (Va. 1904)).) Such principle is a contract principle, *see American Agric. Chem.*, 48 S.E. at 870 ("Both parties must be bound, or neither is bound. 1 Parsons on Contracts . . . ."), and thus does not demonstrate any duty in tort. Moreover, to the extent Plaintiff pursues a negligence claim for the title examination Crotty ordered Defendant to conduct, the Complaint similarly does not demonstrate any duty that Defendant owes to Plaintiff for such a title examination.

Even if the source-of-duty rule did not apply in this case, the economic loss rule independently precludes Plaintiff's negligence claim because Plaintiff has only incurred economic loss from Defendant's alleged misconduct. *See Filak*, 594 S.E.2d at 613. In the prayer of relief section of the Complaint, Plaintiff requested "damages equivalent to the amount of the 2018 Policy in the amount of $275,000," a declaration that Defendant committed "bad faith" in the performance of its duties under the Policy, "consequential damages . . . not limited to the sales price of the Crotty Contract," and attorney's fees and costs. (Compl. 12–13.) All of these stated damages merely represent Plaintiff's economic loss from Defendant's alleged misconduct. None of these damages—and none of the allegations—demonstrate any injury to the "*safety* of person and property." *Sensenbrenner*, 374 S.E.2d at 58 (emphasis added). As the Virginia Supreme Court aptly stated: "This is a purely economic loss, for which the law of contracts provides the sole remedy." *Id.*

15

Plaintiff's only argument in response to this conclusion is that other jurisdictions do not follow the economic loss rule or Virginia's interpretation of it. (Mem. Opp'n Mot. Dismiss 18 (collecting cases outside of Virginia).) However, "[a] federal court sitting in diversity is required to apply the substantive law of the forum state." *Francis v. Allstate Ins.*, 709 F.3d 362, 369 (4th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 96–97 (1941) and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *see also Yerion v. Branch Banking & Trust Co.*, 27 F. Supp. 3d 677, 681 n.1 (E.D. Va. 2014) ("Federal courts sitting in diversity apply the substantive law of the forum state for tort claims brought in Virginia."). Here, Plaintiff is attempting to bring a negligence claim in a Virginia federal court for events occurring exclusively in Virginia. Therefore, Virginia law, and its formulation of the economic loss rule, applies.

Because the source of duty and economic loss rules preclude Plaintiff's negligence claim, the Court grants Defendant's Motion to Dismiss and dismisses with prejudice Count II.

### V. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss (ECF No. 6) as to Count I and grants the Motion as to Count II.

An appropriate Order shall issue.

/s/ _____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: December 21, 2022