IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LANDFALL TRUST LLC,<br>  Plaintiff,<br><br>  v.<br><br>FIDELITY NATIONAL TITLE<br>INSURANCE COMPANY<br>  Defendant. | )<br>)<br>)<br>)  Civil Action No.  3:22cv194 (RCY)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This is a contract dispute arising from a title insurance policy held by Plaintiff Landfall Trust LLC and issued by Defendant Fidelity National Title Insurance Company.  Plaintiff alleges that Defendant breached the policy contract in part by failing to compensate Plaintiff for losses allegedly covered under the policy.  The matter is before the Court on Plaintiff's Motion for Summary Judgment on the Face Amount of the Title Insurance Policy ("Motion for Partial Summary Judgment") (ECF No. 18).  The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated herein, the Court will deny Plaintiff's Motion for Partial Summary Judgment (ECF No. 18).

**I. BACKGROUND**

Based on the pleadings submitted by the parties and a review of the record available when summary judgment was briefed, the Court has concluded that the following narrative represents the undisputed facts for the purpose of resolving the motion for summary judgment:

**A. The Henry's Island Development**

In 2002, real estate developers (the "Developers") sought to develop property in Lancaster County, Virginia, known as "Henry's Island." (Compl. 1, ECF No. 1.) The Developers recorded a "Declaration of Covenants, Conditions and Restrictions for Henry's Island" ("HOA Declaration" or "Declaration," ECF No. 1-1), which included attached plats that showed the development area split into Lots 1 through 10, including the relevant subdivided Lots 9 and 10. ("Plats, ECF No. 1-2.) As part of that development, the Developers subdivided the property into multiple lots, created land use restrictions, and provided easements for roads, common areas, and utilities. (Declaration 5-17.)[1] The Declaration also created the Henry's Island Homeowners Association (the "HOA") for "enforcing the provisions of this Declaration." (Declaration 3, 5.) Such provisions conditioned sale of the lots on certain "easements, restrictions, covenants and conditions, which are imposed for the purpose of protecting the value and desirability of, and which shall run with the land." (Declaration 2.)

Along with Lots 1 through 10, the Declaration's attached plats also depict two different sets of septic drain fields. (*See generally* Plats.) The "Primary Drainfield" abuts Lots 7 and 8, and the "Reserve Drainfield" and Lot 10 are separated by several hundred feet. (*Id.* 3, 4.) Relevant to these drain fields, the Declaration states:

> The Primary and Reserve Drainfield areas as identified on the Subdivision plat shall be used solely for drainfields for the respective lots. [The Developers] reserve[] the right to grant the surface use of the area on the plat designated "Primary Drainfield Area = 1.16 ac. +/-" [sic] to the Owners of Lot 7 and Lot 8. The Owners of Lots 7 and 8 shall not interfere with the use of these sites as drainfields and shall plant no trees or shrubbery on these sites without the approval of the Lancaster County Health Department and the ACC. No driveways, playgrounds other improvements shall be constructed on these sites. The Owners of Lots 7 and 8 shall maintain the surface areas of the Primary Drainfield Area in a manner consistent with good property management. The respective Owners of the Lots served by these sites shall

---

[1] All page numbers referring to documents in the record refer to such documents' page numbers as provided by CM/ECF, and not necessarily to the documents' internal numbering.

> have the right to repair and maintain their drainfields, but the Owner effecting such repair shall return the surface of the site to the condition it was in prior to such repair. Declarant reserves the right to grant the surface use of the Reserve Drainfield Area to the adjacent property owner(s) under the same conditions.

(Declaration 10.)  Further along, in Section 6.01, titled "Utilities and Drainage," the Declaration states:

> [The Developers] reserve[] unto itself, its successors and assigns, a perpetual easement and right of way on, over, and under that portion of each Lot, the Common Drive and the Community Area as [Developers] shall deem necessary for the establishment of drainage ways across such property and within twenty (20) feet of the right of way line of the Common Drive or boundary line of any public right of way and within seven and one-half (7 1/2) feet of any other boundary line of such Lot, Common Drive and Community area to construct, maintain, replace, and use utility lines and facilities or other public conveniences as may be necessary or desirable to serve the Subdivision, provided, however, that such rights shall not unreasonably interfere with the construction of structures. . . . These easements and rights expressly include the right to cut any trees, bushes or shrubbery or to take any other action reasonably necessary to provide economical and safe utility installation and to maintain reasonable standards of health, safety, and appearance.

(Declaration 14.)

### B. The Title Insurance Policy

In 2018, Plaintiff Landfall Trust, LLC ("Landfall Trust" or "Plaintiff") purchased Lots 9 and 10 on Henry's Island.  (*See* Mem. Supp. 3, ECF No. 19).  Defendant Fidelity National Title Insurance Company ("Fidelity" or "Defendant") issued an owner's policy of title insurance to Plaintiff regarding those lots.  ("Insurance Policy" or "2018 Policy," ECF No. 1-3.)  In its "Covered Risks" section, the Insurance Policy insured, in part, against "[t]itle being vested other than as stated in Schedule A"; "[a]ny defect in or lien or encumbrance on the Title"; and "[u]nmarketable title."  (Insurance Policy 9.)  The Insurance Policy also contained a Limitation of Liability section which read:

> (a) If the Company establishes the Title, *or* removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim *of* Unmarketable Title, all as insured, in a reasonably diligent manner by any

3

method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.
(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.
(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

(Insurance Policy 12.)

"Title" is defined in the Insurance Policy as "[t]he estate or interest described in Schedule A." (Insurance Policy 11.) "Schedule A" to the Insurance Policy stated:

1. Name of Insured:
   Landfall Trust, LLC
2. The estate or interest in the Land that is insured by this policy is:
   Fee simple
3. Title is vested in:
   Landfall Trust, LLC
4. The Land referred to in this policy is described as follows:
   **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF[.]**

(Insurance Policy 2.) Exhibit A in the Insurance Policy contained the description of "the Land," as quoted below in its entirety:

All those two certain lots or parcels of land lying and being in Bayside Magisterial District, Lancaster County, Virginia containing 2.15 acres and 2.25 acres, more or less, respectively and being more particularly shown and described on a plat of survey dated March 23, 2018 made by B.L. Stallings Land Surveying, LLC, entitled 'Plat Showing Lots 9 and 10 Henry's Island Prepared for Conveyance To Landfall Trust, LLC', a copy of which is recorded in the clerk's Office of the Circuit Court of Lancaster County, Virginia as Instrument Number 180000542.

Further Together with a proposed 50 foot easement for ingress and egress and utilities as shown as "b" proposed 50 foot easement for ingress, egress and utilities as shown as "A" and the existing 25 foot easement recorded in Plat Book 7 at Page 21B for ingress and egress adn [sic] all other purposes beneficial to the use and enjoyment thereof, from the existing easement to Lot 9 as shown on the aforesaid plat of survey.

4

> Further together with a perpetual appurtenant easement of rightof [sic] way for ingress and egress and all other purposes beneficial to the use and enjoyment thereof, over and across Island Pines Drive and Windfall Lane extending to and from the property herein conveyed and Virginia State Route 698 as shown on the aforesaid plat of survey.

(Insurance Policy 3.) There is no mention of the Primary Drainfield Areas. Finally, the Insurance Policy contained several exceptions to coverage. (Insurance Policy 4–5.) Relevant to this case, the Insurance Policy stated that it

> does not insure against loss or damage . . . which arise by reason of . . . Terms, provisions, restrictions, conditions, easements, liens, assessments, developer rights, options, rights of first refusal and reservations contained in instrument recorded as [the Declaration] . . . .

(*Id.* 4.)

### C. The Crotty Contract

On November 16, 2021, Plaintiff entered into a contract to sell Lots 9 and 10 to Jesse Crotty for $1,550,000. ("Crotty Contract", ECF No. 1-4.) Before the Crotty Contract closed, Crotty sought a title insurance policy over the land—coincidentally also with Defendant. (Mem. Supp. 4.) Pursuant to that request, Defendant issued a formal commitment, known as a "binder," stating that:

> Title to the fee simple estate or interest in the land described or referred to in this commitment is at the effective date hereof vested in:
>
> > Landfall Trust LLC as to [Lots 9 and 10] . . . .

(First Binder 1, ECF No. 1-5.) Subsequently, Defendant withdrew that binder and issued a second binder to Crotty, which asserted that:

> Title to the fee simple estate or interest in the land described or referred to in this Commitment is at the effective date hereof vested in:
>
> > Landfall Trust LLC as to [Lots 9 and 10]
> > . . .
> > [The HOA] as to drainfield easement appurtenant to [Lot 9][.]

(Second Binder 1, ECF No. 1-6.)  Specifically, the Second Binder added an entire paragraph describing previously unidentified easements to the "Legal Description" of the property in question:

> **Further together with a perpetual appurtenant easement** for a septic force main within a 20 foot easement adjacent Windfall Lane to a 15 foot utility easement extending from Windfall Lane in an easterly direction along the southern edge of the "Primary Drainfield Area = 1.16 Ac. +/- " as shown on a plat of survey entitled "PLAT SHOWING CONSOLIDATION AND ADJUSTMENT OF BOUNDARY LINES LOTS 1 THROUGH 10 AND COMMUNITY AREA 'HENRY'S ISLAND' SECTION ONE (FORMERLY KNOWN AS 'ISLAND PINES SECTION ONE)" prepared by Norman L. Sutton, L.S., dated October 19, 2001, last revised April 24, 2002, a copy of which is of record in the aforementioned Clerk's Office in Plat Cabinet 7, Pages 21A and 21B to drainfield for Lot 9 (formerly Lot 10) as shown on a plat of survey entitled "REVISED DRAINFIELD EASEMENT PLAT FOR 'HENRY'S ISLAND' SECTION ONE" prepared by Norman L. Sutton, L.S., dated November 6, 2002 and recorded in the aforesaid Clerk's Office in Plat Cabinet 7, Page 30A and **together with an appurtenant easement** over and across the above mentioned drainfield area for the installation, construction, operation and maintenance of a septic system drainfield.

(*Id.* 3 (emphasis added).)  Additionally, the Second Binder posed requirements on Crotty for Defendant to insure the land.  (*Id.* 4.)  Specifically, Defendant asked for:

> General Warranty Deed with English Covenants of Title From Landfall Trust LLC to Jesse Crotty as to Parcels 1 and 2[2]
>
> NOTE: [The HOA] must join the above required instrument to convey the drainfield easement appurtenant to Parcel 1.
>
> . . .

(*Id.* 4.)  Following the issuance of these conflicting binders, counsel for Crotty raised questions about "title as it relates principally to Lot 9 and required off-site drain access." (Mem. Supp. 6, ECF No. 19.)  Crotty eventually requested a release from the Crotty Contract, and Plaintiff therefore requested Defendant to provide coverage or to provide an accurate description of what

---

[2] Parcel 1 in the Crotty Binders refers to Lot 9 in the Plats, Insurance Policy, and HOA Declaration. Similarly, Parcel 2 in the Crotty Binders refers to Lot 10 in the Plats, Insurance Policy and HOA Declaration.

Plaintiff owned, per the terms of the Insurance Policy. (Correspondence 29–30, ECF No. 1-7.) Ultimately, Plaintiff released Crotty from the Crotty Contract. (*Id.* 23–24.)

### D. The Appraisal

By letter dated July 22, 2022, in response to Plaintiff's claim in the wake of the Crotty Contract's demise, Fidelity transmitted to counsel for Landfall a check in the amount of $90,000.00 "to indemnify the Insured for its loss pursuant to the covered portion of the Insured's title insurance claim." (Appraisal 2, ECF No. 19-1.) The coverage determination letter stated that "[t]he amount of the Insured's loss was calculated pursuant to a diminution in value (DIV) appraisal wherein the appraiser calculated the value of the Property as insured less the value of the Property as is, meaning with the covered title defect in existence." (*Id.*)

The Appraisal's purpose was to

> estimate the Retrospective Value Under Hypothetical conditions involving the Fee Simple Interest, Unimpaired and Impaired, in the subject property as of March 26, 2018, a retrospective date requested per the scope of work. The subject property was visually observed from the exterior at the edge of a private road and from a nearby public street. We note that we did not have access to walk the subject site or view in close proximity.

(*Id.* 8.) The Appraisal determined the $90,000.00 amount based on a diminution of value analysis after a

> consideration under the hypothetical condition that the subject property benefits from both 'A' and 'B' portions of the Proposed 50 Ft easement for *Ingress, Egress, and Utilities* as noted in the survey contained in this report. (Unimpaired Fee Simple Interest). In addition, consideration is made of the fee simple interest (Impaired) under the hypothetical condition that the property benefits only from the 'B' portion of the proposed 50 Ft Easement for *Ingress, Egress, and Utilities*, and does not benefit from the 'A' portion of said easement, that connect the 'B' portion of said easement to the existing 25 Ft wide easement from Play Book 7 Page 21B.

(*Id.* 45.) As a part of the certification of the Appraisal, the appraiser made the following relevant statements:

> 8. I assume that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless otherwise stated in this report.
>
> 9. I assume that applicable zoning and use regulations and restrictions have been complied with, unless nonconformity has been stated, defined, and considered in this appraisal report.
>
> 10. I assume that all required licenses, certificates of occupancy or other legislative or administrative authority from any local, state, or national governmental or private entity or organization have been or can be obtained or renewed for any use on which the value estimates contained in this report are based.
>
> 12. I assume that the utilization of the land and improvements is within the boundaries or property lines of the property described and that there is no encroachment or trespass unless otherwise stated in this report.

(*Id.* 14.)

### E. Lawsuit & the Lang Declaration

On April 10, 2022, Plaintiff commenced the instant litigation against Defendant. (Compl., ECF No. 1.) On August 26, 2022, Plaintiff moved for partial summary judgment (ECF No. 18). Defendant responded on September 9, 2022 (ECF No. 23). On September 15, 2022, Daniel Lang, the sole member and manager of Landfall Trust LLC, submitted a Declaration, attached to Plaintiff's Reply to Defendant's Opposition to Summary Judgment, in which he stated that "Landfall was forced to allow Crotty to withdraw from his contract because Fidelity refused to recognize Landfall's ownership of the drainfield easements." (Lang Decl. 2, ECF No. 24-1.) Further, he states that:

> 6. Based on my personal knowledge as an active member of the HOA, I know that there has been no alteration of the legal description of the lots that are the subject matter of Landfall's pending suit against Fidelity within the meaning of Section 4.12 of Covenants and Restrictions. "4.12. Further Subdivision. No lot shall be further subdivided, altered or re-zoned without the prior written consent of the Declarant and the Board of Directors of the Association.
>
> 7. Based on my personal knowledge as an active member of the HOA, I know that there has been no alteration of the legal description of the lots that are the subject matter of Landfall's pending suit against Fidelity as permited by VA Code $ 55.1-1829 (Amendment to declaration and bylaws), S 55.i-1830 (Validity of declaration;

8

corrective amendments) or S 55.1-1831 (Reformation of declaration; judicial procedure).

(*Id.*)

The Court granted Defendant leave to file a sur-reply, which Defendant did on January 13, 2023 (ECF No. 52).

## II. LEGAL STANDARD

Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the initial burden of demonstrating the absence of any genuine issue of material fact." *DiSciullo v. Griggs & Co. Homes*, 2015 WL 6393813, at *4 (E.D.N.C. Oct. 22, 2015). The burden then "shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Anderson*, 477 U.S. at 255; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion."). "Furthermore, a 'material fact' is a fact that might affect the outcome of a party's case." *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 426–27 (E.D. Va. 2010) (citing *Anderson*, 477 U.S. at 247–48). "Whether a fact is considered to be 'material' is determined by the substantive law, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* at 428. "In ruling on a motion for summary

judgment, the court does not resolve the dispute itself; instead, it finds only that there is sufficient evidence of the dispute requiring that 'the parties' differing versions of the truth' be resolved at trial." *Diprete v. 950 Fairview St., LLC*, No. 1:15CV00034, 2016 WL 6137000, at *2 (W.D. Va. Oct. 21, 2016) (citing *Anderson*, 477 U.S. at 248–49). "If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489–90 (4th Cir. 2005).

### III. DISCUSSION

Plaintiff seeks summary judgment "in the amount of $185,000" for Defendant's alleged breach of contract. (Mem. Supp. 2.) Plaintiff asks the Court to "reserve for later decision the issues of additional damages, prejudgment interest, costs and attorney's fees under Virginia's bad faith statute." (*Id.*) In Virginia, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). To prevail on summary judgment, Plaintiff must establish that there are no genuine issues of material fact and that all undisputed facts support a finding as a matter of law that Defendant breached the Insurance Policy contract.

The Court garners[3] that Plaintiff's argument proceeds as follows:

In the Insurance Policy, Defendant insured that Plaintiff owned all of the land listed in Schedule A—i.e., Parcels 1 and 2—in fee simple. (Compl. ¶ 9, Insurance Policy 2.) The Second Binder Defendant issued to Crotty states that the HOA has a "drainfield easement appurtenant to Parcel 1," and further required that the HOA must "join" on the deed conveying title from Landfall

---

[3] Because Plaintiff does not set forth its complete argument in the pleadings, the Court must piece together an argument from the Complaint, the exhibits attached, and the Memorandum in Support of Summary Judgment.

10

to Crotty to "convey" its easement, suggesting that Plaintiff does not in fact have fee simple interest in all of the land in Schedule A. (Mem. Supp. 5–6; Second Binder 4, ECF No. 1-6.) The Insurance Policy requires Defendant to compensate Plaintiff for losses sustained or incurred by reason of: (i) Title being vested other than as stated in Schedule A, (ii) Any defect in or lien or encumbrance on the Title, (iii) Unmarketable Title. (Insurance Policy 9.) The statement made in the Second Binder and the resulting loss of the Crotty Contract satisfy those conditions of loss, and Defendant admitted that title issues existed when provided the Appraisal and issued partial payment on Plaintiff's policy claim. (Compl. ¶¶ 36–40; Appraisal 2, ECF No. 19-1.) Thus, Defendant should pay out the $185,000 on the insurance policy to Plaintiff. (Mem. Supp. 2.) Defendant's failure to pay out the insurance proceeds means Defendant has breached the contract and Plaintiff has been injured thereby. (Compl. ¶¶ 33–40.)

When drawing all inferences in favor of the non-moving party, the Court holds that Plaintiff is not entitled to summary judgment based on the record presently available for consideration. Specifically, the Court identifies a genuine issue of material fact regarding (1) the ownership of the drainfield easement at issue, and (2) the location of the drainfield easement at issue. These two issues are material and necessary to determine whether or not Plaintiff is entitled to compensation under the Insurance Policy.

### A. Ownership of the Drainfield Easement

Plaintiff's pursuit of summary judgment relies on there being no genuine dispute of material fact regarding Plaintiff's ownership of certain septic drainage easements relative to Lots 9 and 10 of the Henry Island development, because (Plaintiff argues) such ownership impacts whether title was accurately reflected in the Insurance Policy. Plaintiff's argument has two prongs: first, that Defendant made a "judicial admission" as to Plaintiff's ownership of the easements in

11

question, and, second, that Virginia law prohibits the severance of drainfields from a property intended for residential development.

In support of its argument that Defendant has conceded the issue of ownership, Plaintiff contends that the appraiser's assumptions in the Appraisal constitute a judicial admission by Defendant that Plaintiff is the rightful owner of the "septic drainage easements." (Mem. Supp. 8–9.) In particular, the Plaintiff focuses on the following appraiser's statements:

> 8. I assume that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless otherwise stated in this report.
> . . . .
> 12. I assume that the utilization of the land and improvements is within the boundaries or property lines of the property described and that there is no encroachment or trespass unless otherwise stated in this report.

(Appraisal 14.) Additionally, Plaintiff notes that Lancaster County Code provides that:

> For new subdivisions, in no zoning district will a building be allowed that is not designed for public sewer systems unless the involved lot has a valid state approved sewage disposal system permit or letter of certification, not to include permits or certifications for vault or pit privies, and an approved 100 percent reserve site.

Lancaster County Code § 13-11. Thus, Plaintiff argues, the appraiser's assumptions that there is full compliance with local regulations, along with the Lancaster County Code excerpt, dictates that the appraiser's statements amount to "a judicial admission that Landfall owns the septic drainage easements as a part of its property description." (Mem. Supp. 9.) Plaintiff contends that the judicial admission made by Defendant's appraiser "directly contradicts the arguments that Fidelity has made." (*Id.*)

In opposition, Defendant argues that the Appraisal and the payment of the $90,000 was for "a separate access easement claim (which is not at issue in this action)." (Mem. Opp'n 2.) Defendant argues that the payment pursuant to the Appraisal "discharges Fidelity's obligations under the Policy, but Landfall persists in its attempted money grab by seeking summary judgment

awarding the remaining face value of the Policy ($185,000) based on the drainfield issue, which is *not covered*." (*Id.*) In the alternative, Defendant argues that even if the Court adopted Plaintiff's position that the Appraisal serves as a judicial admission that Plaintiff owns the drainfield easements, "the purported conflict between Fidelity's position and that of its appraiser necessarily constitutes a question of material fact *preventing* summary judgment." (Mem. Opp'n 3, 14.)

A judicial admission is a "representation that is conclusive in the case" such as "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014). However, a judicial admission is only binding if the statement is "deliberate, clear, and unambiguous." *Everett v. Pitt. Cty. Bd. of Educ.*, 788 F.3d 132, 141 (4th Cir. 2015).

Here, Defendant's purported "judicial admission" was not contained in a pleading or a stipulation filed by the Defendant. Rather, Plaintiff attempts to derive the admission from statements made by a third-party appraiser pursuant to an appraisal that Defendant hired the third-party to conduct. Not only were the "assumptions" stated in the Appraisal not statements made by the Defendant or its counsel in formal pleadings before the Court, those statements were far from the "deliberate, clear, and unambiguous" statements that courts have found to constitute judicial admissions. *See Everett*, 788 F.3d at 141; *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) (finding an admission made in an amended answer and cross-claim to be binding on the party). In making the aforementioned statements, the third-party appraiser was laying out a number of "assumptions and limiting conditions" that would give context to the findings articulated in the Appraisal. (*See* Appraisal 14.) Because the appraiser's statements do not constitute a judicial admission and Defendant has not made an admission in any of its pleadings, the court finds that Defendant has not admitted that Plaintiff owns the drainage easement appurtenant.

As to the second prong of Plaintiff's argument for ownership of the drainfield easement, Plaintiff claims that it is "illegal to sever the drainfields," "there is no document severing the drainfields," and "[t]here is no additional document required to effect a conveyance of the drainfields to Landfall." (Reply 2, ECF No. 24.) Plaintiff further claims, without citation, that "[t]here are only three ways to change rights established by the covenants: (i) minor technical revisions made by affidavit of the declarant (HOA developer); (ii) a judicial decree noted in the land records; and (iii) an affirmative vote of the members of the HOA with a supermajority as required by the covenants." (Reply 3.) Plaintiff further relies on the declaration of Daniel Lang, the sole member and manager of Landfall Trust LLC, in which Lang claims that, to his knowledge as a member of the Henry Island HOA, there have been no changes to "the legal description of the lots that are the subject matter of Landlfall's pending suit against Fidelity." (Lang Decl. 3.)

Acknowledging that Virginia law has certain requirements for drainage easements relative to land intended for residential development, the fact remains that the record is contradictory as to who holds what interest in any easements related to the property in question. While Plaintiff claims Landfall is the rightful owner of the drainfield easement, the Second Binder states that the HOA has "[t]itle to the fee simple estate or interest" in the "drainfield easement appurtenant as to Parcel 1." (Second Binder 1.) Plaintiff asks the Court to trust one document over another in deciding which accurately reflects the status of land ownership, but Plaintiff asks this without providing the Court the benefit of a complete record. Plaintiff has offered no deposition testimony to illuminate the application of the Declaration as it pertains to the various easements described, nor testimony that might explain how the property descriptions in the Policy and the two Crotty Binders came to differ in such a material aspect, nor testimony as to how easement interests are typically reflected in title search and policy documents given that easements do not constitute ownership of the

underlying land. *See Beach v. Turim*, 287 Va. 223, 228, 754 S.E.2d 295, 297 (Va. 2014) ("An easement is the privilege to use the land of another in a particular manner and for a particular purpose, but it does not give the owner of the dominant estate an ownership interest in the servient tract." (internal citations omitted)).

As to the Lang Declaration, there very well may have been an alteration of which Mr. Lang is simply unaware. With there being no discovery conducted in this case and with the Plaintiff presenting no affirmative evidence regarding Landfall's interest in the land, the Court refuses to grant summary judgment solely based on the limited personal knowledge of a self-interested party.

Thus, given that Defendant has not admitted that Plaintiff owns the drainfield easement, and given the incomplete and contradictory record, the Court finds that there is a genuine dispute of material fact as to the ownership of the drainfield easements at play in this case. At this stage, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and thus summary judgment is not appropriate. *Anderson*, 477 U.S. at 242.

### B. Identification of the Drainfield Easement(s) Giving Rise to Breach

Ownership issues aside, at this stage in the litigation, Plaintiff has not met its burden of demonstrating an absence of a genuine issue of material fact regarding the identification of which easement(s) give(s) rise to Defendant's alleged breach. *See Celotex Corp.*, 477 U.S. at 323. As recited above, the Declaration reserves use of the Primary and Reserve Drainfield areas "solely [as] drainfields for the respective lots," and assigns "Owners of the Lots served by these sites . . . the right to repair and maintain their drainfields . . . ." (Declaration 10.) The Declaration also reserves a perpetual easement for the Developers[4] "on, over, and under that portion of each Lot . . . as [Developers] shall deem necessary for the establishment of drainage ways across such

---

[4] Which interest, the Court understands, has now passed to the HOA.

property . . . ." (Declaration 14.) The Insurance Policy's description of land-title fails to identify any easement interests, whether dominant or servient, related to drainfields, though it does identify various utilities and right-of-way easements. (Insurance Policy 3.) This stands in contrast to the property description of purportedly the same land and title interests found in the Second Crotty Binder, which identifies a HOA "drainfield easement appurtenant to Parcel 1." (Second Binder 1.) And yet where the Second Binder's title description contains just this one newly described property interest, the paragraph added to the Second Binder's "Legal Description" of the property identifies *two* additional easements: first, a "perpetual appurtenant easement for a septic force main within a 20 foot easement adjacent Windfall Lane to a 15 foot utility easement extending from Windfall Lane in an easterly direction along the southern edge of the Primary Drainfield Area. . ." and, second, "an appurtenant easement over and across the above mentioned drainfield area for the installation, construction, operation and maintenance of a septic system drainfield." (Second Binder 2.)

    While the Court could speculate as to which Binder-described easement(s) are associated with which Declaration-described easement(s), and further from there which easement(s) should or should not be considered part of the property description covered by the Insurance Policy, and finally from there which easement(s) form the basis for Plaintiff's claim of breach, such is not the role of the Court at the summary judgment stage. It is the responsibility of the moving party to present a clear, undisputed landscape of facts from which the Court can draw legal conclusions. Without muddying the record with a recitation of the confusing and sometimes contradictory allegations and arguments presented by Plaintiff regarding the property interests at issue, suffice it to say, such a clear and undisputed landscape of fact is utterly lacking here. The inconsistencies regarding the location of the pertinent easement(s) at issue demonstrates that the pleadings and the

16

evidence before the Court "is susceptible of more than one reasonable inference," and thus summary judgment should be denied. *Myrick*, 395 F.3d at 489–90.

## IV. CONCLUSION

For the forgoing reasons, the Court will deny Plaintiff's Motion for Partial Summary Judgment.

An appropriate Order shall issue.

/s/<br>
Roderick C. Young<br>
United States District Judge

Richmond, Virginia
Date: March 13, 2023