IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LANDFALL TRUST LLC,<br>    Plaintiff,<br><br>        v.<br><br>FIDELITY NATIONAL TITLE<br>INSURANCE COMPANY,<br>    Defendant. | Civil Action No. 3:22CV194 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Second Motion for Partial Summary Judgment (ECF No. 97) and Defendant's Motion for Summary Judgment (ECF No. 90). The Court has considered the parties' briefs and documents in support and the arguments of counsel at the summary judgment hearing on June 7, 2023. For the reasons stated herein, the Court will deny Plaintiff's Second Motion for Partial Summary Judgment (ECF No. 97), and grant in part and deny in part Defendant's Motion for Summary Judgment (ECF No. 90).

**I. BACKGROUND**

**A. The Henry's Island Development**

In 2002, real estate developers (the "Developers") sought to develop property in Lancaster County, Virginia, known as "Henry's Island." (Aff. Ray Aaronian ¶ 12, ECF No. 91.) The Developers also formed and were members of Dominion Land investments, L.L.C. ("Dominion"). (*Id.*) The Developers, as the "Declarant," recorded a "Declaration of Covenants, Conditions and Restrictions for Henry's Island" ("HOA Declaration" or "Declaration," ECF No. 91-4), which included attached plats that showed the development area split into Lots 1 through 10, including the relevant subdivided Lots 9 and 10. ("Plats," ECF No. 91-3.) As part of that development, the Developers subdivided the property into multiple lots, created land use restrictions, and provided

1

easements for roads, common areas, and utilities. (*See generally* Declaration.)[1] The Declaration also created the Henry's Island Homeowners Association (the "HOA") for "enforcing the provisions of this Declaration." (Declaration 5–7.) Such provisions conditioned sale of the lots on certain "easements, restrictions, covenants and conditions, which are imposed for the purpose of protecting the value and desirability of, and which shall run with the land." (Declaration 2.)

Along with Lots 1 through 10, the Declaration's attached plats also depict two different sets of septic drainfields. (*See generally* Plats.) The "Primary Drainfield" abuts Lots 7 and 8, and the "Reserve Drainfield" and Lot 10 are separated by several hundred feet. (*Id.*) Relevant to these drainfields, Section 4.10 of the Declaration states:

> The Primary and Reserve Drainfield areas as identified on the Subdivision plat shall be used solely for drainfields for the respective lots. [The Developers] reserve[] the right to grant the surface use of the area on the plat designated "Primary Drainfield Area = 1.16 ac. +/-" [sic] to the Owners of Lot 7 and Lot 8. The Owners of Lots 7 and 8 shall not interfere with the use of these sites as drainfields and shall plant no trees or shrubbery on these sites without the approval of the Lancaster County Health Department and the ACC. No driveways, playgrounds other improvements shall be constructed on these sites. The Owners of Lots 7 and 8 shall maintain the surface areas of the Primary Drainfield Area in a manner consistent with good property management. The respective Owners of the Lots served by these sites shall have the right to repair and maintain their drainfields, but the Owner effecting such repair shall return the surface of the site to the condition it was in prior to such repair. Declarant reserves the right to grant the surface use of the Reserve Drainfield Area to the adjacent property owner(s) under the same conditions.

(Declaration 10.) Further along, in Section 6.01, titled "Utilities and Drainage," the Declaration states:

> [The Developers] reserve[] unto itself, its successors and assigns, a perpetual easement and right of way on, over, and under that portion of each Lot, the Common Drive and the Community Area as [Developers] shall deem necessary for the establishment of drainage ways across such property and within twenty (20) feet of the right of way line of the Common Drive or boundary line of any public right of way and within seven and one-half (7 1/2) feet of any other boundary line of such Lot, Common Drive and Community area to construct, maintain, replace, and use

---

[1] All page numbers referring to documents in the record refer to such documents' page numbers as provided by CM/ECF, and not necessarily to the documents' internal numbering.

> utility lines and facilities or other public conveniences as may be necessary or desirable to serve the Subdivision, provided, however, that such rights shall not unreasonably interfere with the construction of structures. . . . These easements and rights expressly include the right to cut any trees, bushes or shrubbery or to take any other action reasonably necessary to provide economical and safe utility installation and to maintain reasonable standards of health, safety, and appearance.

(Declaration 15.)

### B. Transfers of Land

By deed dated October 24, 2010 and recorded December 15, 2010, the Developers conveyed Lots 9 and 10, a separate 12.53-acre common area, and the "Primary Drainfield Area" to Dominion. (Dominion Deed, ECF No. 91-5.) By deed dated January 24, 2011 and recorded on February 24, 2011, Dominion then conveyed the Primary Drainfield Areas to the HOA. (HOA Deed, ECF No. 91-6.) By deed dated March 22, 2018 and recorded on March 26, 2018, Dominion conveyed Lots 9 and 10 to Landfall. (Landfall Deed, ECF No. 91-7.) By Deed of Gift dated December 19, 2018 and recorded on December 28, 2018, Dominion conveyed all of its remaining interests in the Henry's Island subdivision to the HOA. (HOA Gift, ECF No. 91-9.)

### C. The Title Insurance Policy

Defendant Fidelity National Title Insurance Company ("Fidelity" or "Defendant") issued an owner's policy of title insurance to Plaintiff regarding Lots 9 and 10. ("Insurance Policy," ECF No. 91-1.) In its "Covered Risks" section, the Insurance Policy insured, in part, against "[t]itle being vested other than as stated in Schedule A"; "[a]ny defect in or lien or encumbrance on the Title"; and "[u]nmarketable title." (*Id.* 9.)

"Title" is defined in the Insurance Policy as "[t]he estate or interest described in Schedule A." (Insurance Policy 11.) "Schedule A" to the Insurance Policy stated:

1. Name of Insured:
   Landfall Trust, LLC
2. The estate or interest in the Land that is insured by this policy is:
   Fee simple

> 3. Title is vested in:
> Landfall Trust, LLC
> 4. The Land referred to in this policy is described as follows:
> **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF[.]**

(*Id.* 2.) Exhibit A in the Insurance Policy contained the description of "the Land," as quoted below in its entirety:

> All those two certain lots or parcels of land lying and being in Bayside Magisterial District, Lancaster County, Virginia containing 2.15 acres and 2.25 acres, more or less, respectively and being more particularly shown and described on a plat of survey dated March 23, 2018 made by B.L. Stallings Land Surveying, LLC, entitled 'Plat Showing Lots 9 and 10 Henry's Island Prepared for Conveyance To Landfall Trust, LLC', a copy of which is recorded in the clerk's Office of the Circuit Court of Lancaster County, Virginia as Instrument Number 180000542.
>
> Further Together with a proposed 50 foot easement for ingress and egress and utilities as shown as "b" proposed 50 foot easement for ingress, egress and utilities as shown as "A" and the existing 25 foot easement recorded in Plat Book 7 at Page 21B for ingress and egress adn [sic] all other purposes beneficial to the use and enjoyment thereof, from the existing easement to Lot 9 as shown on the aforesaid plat of survey.
>
> Further together with a perpetual appurtenant easement of rightof [sic] way for ingress and egress and all other purposes beneficial to the use and enjoyment thereof, over and across Island Pines Drive and Windfall Lane extending to and from the property herein conveyed and Virginia State Route 698 as shown on the aforesaid plat of survey.

(*Id.* 3.) There is no mention of the Primary Drainfield Areas. The Insurance Policy defined "Unmarketable Title" as

> Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

(*Id.* 11.) The Insurance Policy contained also several exceptions to coverage. (*Id.* 4–5.) Relevant to this case, Exception 7 of the Insurance Policy stated that it

> does not insure against loss or damage . . . which arise by reason of . . . Terms, provisions, restrictions, conditions, easements, liens, assessments, developer rights,

options, rights of first refusal and reservations contained in instrument recorded as [the Declaration] . . . .

(*Id.* 4.)  Finally, the Insurance Policy also contained a series of Conditions, Condition 9, titled, Limitation of Liability, reads:

> (a) If the Company establishes the Title, *or* removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim *of* Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.
> (b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.
> (c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

(*Id.* 12.)

### D. The Crotty Contract

On November 16, 2021, Plaintiff entered into a contract to sell Lots 9 and 10 to Jesse Crotty for $1,550,000.  ("Crotty Contract", ECF No. 91-11.)  Before the Crotty Contract closed, Crotty sought a title insurance policy over the land—coincidentally also with Defendant.  ("First Binder," ECF No. 91-12.)  Pursuant to that request, Defendant issued a formal commitment, known as a "binder," stating that:

> Title to the fee simple estate or interest in the land described or referred to in this commitment is at the effective date hereof vested in:
>
>> Landfall Trust LLC as to [Lots 9 and 10] . . . .

(*Id.* 1.)  Subsequently, Defendant withdrew that binder and issued a second binder to Crotty, which asserted that:

> Title to the fee simple estate or interest in the land described or referred to in this Commitment is at the effective date hereof vested in:

5

>    Landfall Trust LLC as to [Lots 9 and 10]
>
>    . . .
>
>    [The HOA] as to drainfield easement appurtenant to [Lot 9][.]

("Second Binder" 1, ECF No. 91-13.)  Specifically, the Second Binder added an entire paragraph describing previously unidentified easements to the "Legal Description" of the property in question:

> **Further together with a perpetual appurtenant easement** for a septic force main within a 20 foot easement adjacent Windfall Lane to a 15 foot utility easement extending from Windfall Lane in an easterly direction along the southern edge of the "Primary Drainfield Area = 1.16 Ac. +/- " as shown on a plat of survey entitled "PLAT SHOWING CONSOLIDATION AND ADJUSTMENT OF BOUNDARY LINES LOTS 1 THROUGH 10 AND COMMUNITY AREA 'HENRY'S ISLAND' SECTION ONE (FORMERLY KNOWN AS 'ISLAND PINES SECTION ONE)" prepared by Norman L. Sutton, L.S., dated October 19, 2001, last revised April 24, 2002, a copy of which is of record in the aforementioned Clerk's Office in Plat Cabinet 7, Pages 21A and 21B to drainfield for Lot 9 (formerly Lot 10) as shown on a plat of survey entitled "REVISED DRAINFIELD EASEMENT PLAT FOR 'HENRY'S ISLAND' SECTION ONE" prepared by Norman L. Sutton, L.S., dated November 6, 2002 and recorded in the aforesaid Clerk's Office in Plat Cabinet 7, Page 30A and **together with an appurtenant easement** over and across the above mentioned drainfield area for the installation, construction, operation and maintenance of a septic system drainfield.

(*Id.* 3 (emphasis added).)  Additionally, the Second Binder posed requirements on Crotty for Defendant to insure the land. (*Id.* 4.)  Specifically, Defendant asked for:

> General Warranty Deed with English Covenants of Title From Landfall Trust LLC to Jesse Crotty as to Parcels 1 and 2[2]
>
> NOTE: [The HOA] must join the above required instrument to convey the drainfield easement appurtenant to Parcel 1.
>
> . . .

(*Id.* 4.)

---

[2] Parcel 1 in the Crotty Binders refers to Lot 9 in the Plats, Insurance Policy, and HOA Declaration. Similarly, Parcel 2 in the Crotty Binders refers to Lot 10 in the Plats, Insurance Policy and HOA Declaration.

### E. Landfall's Claim

Following the issuance of the Second Binder, Landfall sought to resolve the differences between its Title Insurance Policy's title description and those contained in the First and Second Binders with underwriting counsel for Fidelity, but ultimately resorted to filing a claim on its title Insurance Policy on January 7, 2022. (Claim Letter, ECF No. 91-14.) On January 13, 2023, Crotty provided notice of the termination of the Crotty Contract to Landfall. (Crotty Termination, ECF No. 91-16.) On February 1, 2022, Landfall informed Fidelity of Crotty's failure to close on the Crotty Contract. (Notice, ECF No. 91-18.) On February 23, 2022, Fidelity issued its Coverage Letter to Landfall, in which Fidelity accepted coverage as to an access easement, Easement A, but denied coverage as to Landfall's claim related to Fidelity's descriptions of the Primary Drainfield Areas and the drainage easements. ("Coverage Letter," ECF No. 91-20.) On February 28, 2023, Landfall and Crotty engaged in a mediation and, through an agreement effective that same date, settled their dispute. (*See* Landfall-Crotty Settlement Agreement, ECF No. 91-21.)

On March 10, 2022, Landfall requested that Fidelity reconsider its coverage denial. (Request for Reconsideration, ECF No. 91-22.) Having received no response, on April 10, 2022, Landfall commenced the instant litigation against Fidelity. (Compl., ECF No. 1.) On April 28, 2022, Fidelity issued a response denying Landfall's request for reconsideration. (Reconsideration Response, ECF No. 91-23.) On July 22, 2022, Fidelity issued a $90,000.00 payment to Landfall based on its earlier partial acceptance of coverage related to Easement A. (Loss Determination, ECF No. 91-24.)

### F. Rule 19 Litigation

After the case had progressed for some time, on February 14, 2023, Defendant filed a Motion to Dismiss for Lack of Jurisdiction and Failure to Join Indispensable Party Pursuant to Fed. R. Civ. P. 19 ("Rule 19 Motion to Dismiss," ECF No. 72). The Rule 19 Motion to Dismiss

was predicated on Plaintiff's arguments seeking the Court to resolve questions of ownership of the actual drainfield areas and challenging the validity of the deeds transferring the drainfield areas to the HOA. Fidelity argued that the HOA needed to be joined to the litigation as a necessary and indispensable party because such arguments implicated the HOA's rights and interests, necessitating their joinder. (Mem. Supp. Rule 19 Mot. 2, ECF No. 74.) Such joinder would, however, divest the Court of subject matter jurisdiction over the suit due to the lack of diversity of citizenship between the HOA and Landfall.

After that Motion had been fully briefed, but before the Court issued a ruling, the parties each filed the instant Motions for Summary Judgment (ECF Nos. 90, 97). On May 11, 2023, the Court denied Fidelity's Rule 19 Motion, explicitly stating:

> Plaintiff's breach of contract suit does not necessitate the joinder of the HOA, as ascertaining the ownership of the drainfield areas is not a necessary pre-requisite before the Court can turn to the merits of the breach of contract claim. In other words, Plaintiff is potentially capable of succeeding on the merits of its breach of contract suit based on the various insurance documents and title binders before the Court, without delving into the actual ownership of the drainfield areas.

(Mem. Op. 7, ECF No. 115 ("Rule 19 Opinion")). On June 7, 2023, the Court heard oral argument on the Motions for Summary Judgment, with particular focus on the question of whether the Court's Rule 19 Opinion rendered moot certain of the parties' arguments for summary judgment. This opinion follows.

## II. LEGAL STANDARD

Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the initial burden of

demonstrating the absence of any genuine issue of material fact." *DiSciullo v. Griggs & Co. Homes*, 2015 WL 6393813, at *4 (E.D.N.C. Oct. 22, 2015). The burden then "shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Anderson*, 477 U.S. at 255; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion."). "Furthermore, a 'material fact' is a fact that might affect the outcome of a party's case." *Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 426–27 (E.D. Va. 2010) (citing *Anderson*, 477 U.S. at 247–48). "Whether a fact is considered to be 'material' is determined by the substantive law, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* at 428.

"In ruling on a motion for summary judgment, the court does not resolve the dispute itself; instead, it finds only that there is sufficient evidence of the dispute requiring that 'the parties' differing versions of the truth' be resolved at trial." *Diprete v. 950 Fairview St., LLC*, No. 1:15CV00034, 2016 WL 6137000, at *2 (W.D. Va. Oct. 21, 2016) (citing *Anderson*, 477 U.S. at 248–49). "If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489–90 (4th Cir. 2005).

### III. DISCUSSION

#### A. Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment on the question of liability under the reasoning that (1) Defendant "Fidelity has judicially admitted that the subject property is not marketable

under any definition of that term," and (2) "the transfers [of title] upon which Fidelity relies are invalid or create ambiguities which must be interpreted in favor of Landfall." (Mem. Supp. Pl.'s Mot. Summ. J. 1, 5, ECF No. 98.)

### 1. Judicial Admission

First, Plaintiff argues that Defendant's filing of a Rule 19 Motion was a judicial admission by Defendant that Plaintiff's title was "unmarketable" as defined by the Insurance Policy.

A judicial admission is a "representation that is conclusive in the case" such as "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014). However, a judicial admission is only binding if the statement is "deliberate, clear, and unambiguous." *Everett v. Pitt. Cnty. Bd. of Educ.*, 788 F.3d 132, 141 (4th Cir. 2015).

Despite Plaintiff's claim to the contrary, Defendant's filing of the Rule 19 Motion did not arise to a judicial admission that the title was "unmarketable." Nowhere in the Rule 19 briefing did Defendant formally admit or concede or state in a "deliberate, clear and unambiguous" manner that Plaintiff's title was "unmarketable." *See Everett*, 788 F.3d at 141. Instead, Defendant filed the motion to counter Plaintiff's argument that the HOA deed transfers are invalid by noting that, for the Court to evaluate such an argument, the HOA would need to be joined to this litigation as a necessary and indispensable party, which would strip the Court from retaining subject matter jurisdiction over the dispute. (*See* Def.'s Resp. Opp'n Mot. Summ. J. 6–7, ECF No. 103.) Thus, the Court holds that Plaintiff is not entitled to summary judgment, because Plaintiff has failed to carry its burden to establish that Defendant in fact made a judicial admission that title was "unmarketable."

2. Drainfield Areas and Drainage Easements

Second, Plaintiff asks that the Court find—as a matter of law—that the deeds purporting to transfer the Primary Drainfield Areas and the drainage easements are invalid under Virginia property law. As stated in the summary judgment hearing on June 7, 2023, the Court's ruling in favor of the Plaintiff on the Defendant's Rule 19 Motion precludes the Court from addressing any legal arguments disputing the deeds transferring title to the HOA or any arguments regarding the HOA's ownership over or property interest in either the drainfield easements or the Primary Drainfield Areas as those directly implicate the HOA's interests and evaluating such legal theories would necessitate the joinder of the HOA, which would divest this Court of subject matter jurisdiction. The Court denied the Defendant's Rule 19 Motion because, based on the theories of breach outlined in the Complaint, Plaintiff is hypothetically capable of succeeding on the merits of this breach of contract case without the need to dispute the deeds or transfers of title to the HOA. The appropriate venue for Plaintiff to argue about that property dispute would be a quiet title action brought against the HOA. If the Plaintiff persists in making those arguments, the Court must revisit its Rule 19 Opinion, join the HOA, and dismiss this case for lack of subject matter jurisdiction.[3]

Out of fairness to the parties, due to the fact that the parties had submitted their summary judgment briefing prior to the Court's Rule 19 ruling, the Court will grant the parties an opportunity to re-brief given the new legal landscape, as set out in an Order to follow. Re-briefing notwithstanding, summary judgment for Plaintiff on this ground will be denied in light of the

---

[3] Given Plaintiff's concession at the summary judgment hearing that the drainage easements were no longer relevant, the Court cautiously believes Plaintiff has grasped the Court's ruling and is no longer advancing this argument.

11

Court's Rule 19 Opinion. (*See* Mem. Op. 4–7, ECF No. 115.) Plaintiff's Motion for Summary Judgment will accordingly be denied in full.

### B. Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on three grounds: (1) The Primary Drainfield Area and the drainage easements that Plaintiff relies upon for its breach of contract suit are not included in Exhibit "A" of the Insurance Policy and thus they cannot be the basis for a breach of the Insurance Policy; (2) Exception 7 to the Insurance Policy precludes Plaintiff's arguments based on the Primary Drainfield Areas and drainage easements because they "arise from" the Declaration and its covenants, which the Insurance Policy specifically exempts liability for; and (3) Condition 9(c) of the Insurance Policy absolves Defendant from liability because Plaintiff did not obtain prior approval from Defendant before settling its dispute with Crotty.

1. Exhibit A

First, Defendant attempts to argue that issues concerning the Primary Drainfield Area and drainage easements in the Henry's Island subdivision cannot form the basis of a claim for breach of the Policy because no reference is made to those parcels and interests in Exhibit "A" to the Insurance Policy, which defines what is insured by the Insurance Policy. Defendant argues that, instead of simply describing the insured parcel, Exhibit "A" to the Insurance Policy also serves as a limitation on what is and is not insured. (Mem. Supp. Def.'s Mot. Summ. J. 10, ECF No. 92.)

At the summary judgment hearing, Plaintiff's counsel seemed to suggest that the language of the Insurance Policy could be read to insure the Primary Drainfield Area. The Court finds that this is an issue of contract interpretation that the parties have unfortunately not yet adequately briefed and plans on ordering re-briefing on this issue and will thus not grant or deny summary judgment based on this issue at this time. Given the new landscape of the case after the Court's ruling on the Rule 19 Motion, the Court believes the parties should have an opportunity to address

the contract interpretation questions and will deny summary judgment on Defendant's claim at this time.

### 2. Exception 7

Second, Defendant argues that there can be no breach of contract here because Plaintiff's entire theory of the case is barred by Exception 7 to the Insurance Policy. (*Id.* 11.) In an insurance context, while the policyholder bears the burden of proving that the policyholder's conduct is covered by the policy," *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 63, 636 (4th Cir. 2005) (citations omitted), "the insurer bears the burden of proving that an exclusion applies." *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360, 369 (E.D. Va. 2020) (quoting *Bohreer v. Erie Ins. Group*, 475 F.Supp.2d 578, 585 (E.D. Va. 2007) (internal citations omitted)). Therefore, "[w]here an insured has shown that his loss occurred while an insurance policy was in force, if the insurer relies upon exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case." *Bituminous Cas. Corp. v. Sheets*, 389 S.E.2d 696, 698 (Va. 1990); *see also Am. Reliance Ins. Co. v. Mitchell*, 385 S.E.2d 583 (Va. 1989) ("Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies.").

Exception 7 to the Insurance Policy states:

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) which arise by reason of the following: . . . 7. Terms, provisions, restrictions, conditions, easements, liens, assessments, developer rights, options rights of first refusal and reservations contained in [the] instrument recorded as Instrument No. 020003194 [(the Declaration)].

(Insurance Policy 4.)

The Court finds that the language in Exception 7 is clear and unambiguous. It states that the Insurance Policy does not insure against any loss or damages that arise out of the terms of the

Declaration. Plaintiff has offered no other compelling interpretation of the language in Exception 7, resorting instead to an argument that Exception 7 can be read to exclude liability for anything. The Court finds Plaintiff's argument unavailing and believes the limitation of loss included within Exception 7 is clear, deliberate, and limited only to the terms contained with the Declaration. Thus, Defendant will be granted summary judgment as to the argument that Exception 7 bars any liability for loss or damage that arises out of the terms contained within the Declaration. In other words, Exception 7 bars Plaintiff from relying on the provisions of the Declaration as a manner of alleging a breach of the Insurance Policy, because Exception 7 clearly prohibits such a claim. However, Defendant's motion for summary judgment will be denied to the extent that it seeks to preclude Plaintiff's entire claim of breach of contract against Defendant. While Plaintiff may no longer rely on the terms of the Declaration to ground its breach of contract claim against Defendant, Plaintiff may still pursue other avenues of breach that do not involve allegations of loss arising from the terms of the Declaration.

### 3. Condition 9(c)

Finally, Defendant argues that Subsection (c) of Condition 9, entitled Limitation of Liability, of the Insurance Policy absolves Defendant of liability in this case because Plaintiff settled its dispute with its proposed purchaser, Crotty, without written permission from Defendant. Subsection (c) of Condition 9 of the Insurance Policy reads:

> "The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without prior written consent of the Company."

(Insurance Policy 12.)

In *Bluff Ventures Ltd. P'ship v. Chicago Title Ins. Co.*, the Fourth Circuit addressed whether a Limitation of Liability provision which exactly mirrored the one present here precluded an insurer's liability to an insured. 950 F.2d 139 (4th Cir. 1991). In that case, the district court "held

that Bluff Ventures could not recover against Chicago Title because it had not complied with the provision of the policy that no settlement could be made without Chicago Title's consent. (referring to the settlement of Bluff Ventures and a third party regarding two lawsuits in the Circuit Court of Loudoun County)." *Id.* at 143. Bluff Ventures argued that it was relieved from complying with the limitation of liability provision's mandate that any settlement had to be approved by the insurer because Chicago Title denied coverage prior to the settlement. *Id.* In analyzing the issue, the Fourth Circuit first summarized the relevant Virginia case law:

> In *Andrews v. Cahoon*, 196 Va. 790, 86 S.E.2d 173 (1955), the Virginia Court held that when an insurer disclaims liability under the policy, the insurer cannot later raise as a defense to a claim for indemnification the insured's failure to notify the insurer of a suit against the insured. In C*ontinental Casualty Co. v. Lindsay*, 111 Va. 389, 69 S.E. 344 (1910), the insurance company, after notifying the insured that any claim submitted would be denied, raised as a defense the insured's failure to comply with the proof of claim requirement of the policy. The court held that "[a] distinct denial of liability and refusal to pay on the ground that there is no liability is a waiver of the condition requiring proof of loss." 111 Va. at 391, 69 S.E. at 345.

*Id.* at 144. Then, the court concluded that Chicago Title's denial of coverage relieved Bluff Ventures of any duty to notify Chicago Title prior to settling its claim and that the settlement of the Loudoun County cases to which Chicago Title was not a party did not bar the claim. *Id.*

In the present case, counsel for defendant, at the summary judgment hearing, proffered that on February 1, 2023, Landfall transmitted to Fidelity a notice that informed Fidelity that Landfall and Crotty expected to conduct a mediation before the end of February. Then, via a letter issued on February 23, 2023, Fidelity denied Landfall's claim and refused to provide the full coverage that Landfall sought. Afterwards, on February 28, 2023, Landfall and Crotty engaged in a mediation and via an agreement effective that same date, settled their dispute. Thus, as in the case in *Bluff Ventures*, it is clear from the timeline in this case that Fidelity denied coverage as to Landfall's claim <u>before</u> Landfall settled its dispute with Crotty.

Defendant claims that the present matter is unlike *Bluff Ventures* because there was no formal lawsuit filed between Landfall and Crotty and thus Defendant had no notice whatsoever of the settlement or the potential of a settlement. However, neither the *Bluff Ventures* opinion nor the Virginia case law that *Bluff Ventures* analyzed mandates that notice be given in the form of a formal lawsuit if the insurer denied coverage before the insured's settlement. Furthermore, Condition 9(c) itself states "claim or suit," which contemplates the settlement of other claims that are not necessarily in the form of a lawsuit. Thus, summary judgment for Defendant on the grounds that Condition 9(c) precludes Plaintiff's claim is improper, and will be denied.

## IV. CONCLUSION

For the forgoing reasons, the Court will deny Plaintiff's Second Motion for Partial Summary Judgment (ECF No. 97), and grant in part and deny in part Defendant's Motion for Summary Judgment (ECF No. 90).

An appropriate Order shall issue.

/s/ _____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: June 13, 2023