IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LANDFALL TRUST LLC,       )<br>    Plaintiff,       )<br>       )<br>    v.       )<br>       )<br>FIDELITY NATIONAL TITLE,       )<br>INSURANCE COMPANY,       )<br>    Defendant.       )<br>       ) | Civil Action No. 3:22CV194 (RCY) |

## MEMORANDUM OPINION

This is a breach of contract case arising from a title insurance policy held by Plaintiff Landfall Trust LLC ("Plaintiff" or "Landfall") and issued by Defendant Fidelity National Title Insurance Company ("Defendant" or "Fidelity"). The case is presently before the Court on two motions by Plaintiff: (1) a motion for "bad faith" attorney fees pursuant to Virginia Code § 38.2-209, ECF No. 233;[1] and (2) a Motion for Attorney Fees Pursuant to 28 U.S.C. § 1927 and this Court's Inherent Authority, ECF No. 234. For the reasons stated below, the Court will deny both motions.

## I. BACKGROUND

For present purposes, the Court need not re-hash the lengthy factual background of this dispute. The Court will, however, broadly set the procedural scene. On April 10, 2022, Landfall initiated this suit against Fidelity. *See* Compl., ECF No. 1. In its Complaint, Landfall alleged

---

[1] The Court directed Plaintiff to file "a brief and any supporting documents," Order, ECF No. 231, however, "[t]o obtain fees under § 38.2-209, . . . the appropriate procedure is for a plaintiff to 'stat[e] that it plans to seek costs or attorneys' fees under section 38.2-209 in its prayer for relief' and then 'seek its costs or attorne[y] fees *by filing a suitable motion*' if judgment is ultimately entered." *Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, 2012 WL 3579879, at *4 (E.D. Va. June 22, 2012) (Novak, M.J.) (emphasis added) (quoting *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, 2008 WL 2857191, at *5–6 (E.D. Va. July 21, 2008)), *report and recommendation adopted*, 2012 WL 3562755 (E.D. Va. Aug. 17, 2012). For that reason, the Court construes Plaintiff's filing at ECF No. 233 as a motion for attorney fees under Virginia Code § 38.2-209.

various counts, including a claim against Fidelity for breach of the parties' title insurance policy ("Policy"), on a theory of failure to cure or compensate for "unmarketable title within the meaning of the Policy." *Id.* at 10, ¶¶ 33–39. In its "Prayer for Relief," Landfall sought, among other things, damages and "an award of attorney's fees, costs and expenses under" Virginia Code § 38.2-209 because Fidelity's denial of Landfall's title insurance claim "was made in bad faith within the meaning of Code §[ ]38.2-209." *Id.* at 12, ¶¶ 1–3.

On October 2, 2023, the Court granted Landfall's renewed motion for summary judgment and denied Fidelity's cross-motion, ruling that, on the arguments presented, Landfall had established Fidelity's breach of the Policy by failing to respond properly to the occurrence of "unmarketable title" as that term is bespokely defined in the Policy. *See* Mem. Op. on Renewed Mots. Summ. J., ECF No. 143. The Court left open the issue of damages, to be decided at trial. *See id.* The trial would not decide the question of Landfall's "bad faith" Virginia Code § 38.2-209 attorney fees claim, as the Court bifurcated that claim and ordered that the question of Landfall's entitlement to "bad faith" relief under § 38.2-209 would be resolved by the Court post-trial. *See* Order on Mot. Limine, ECF No. 127.

On December 11, 2023, the Court commenced a jury trial on the damages question. On December 12, 2023, the jury returned a verdict finding Fidelity liable for damages to Landfall in the amount of $185,000.00, the Policy limits. *See* Jury Verdict, ECF No. 227.

On December 13, 2023, the Court entered an "Order on 'Bad Faith' Claim," setting the briefing schedule for Landfall's "bad faith" claim. *See* ECF No. 231 (hereinafter, "'Bad Faith' Claim Briefing Order"). The Court ordered that, if Landfall was to pursue its intended "bad faith" relief under Virginia Code § 38.2-209, Landfall "must file a brief and any supporting documents as are appropriate within fourteen (14) days after entry of th[at] Order." *Id.* The Court also laid

out the schedule for Fidelity's time to respond and Landfall's time to reply. *Id.*

On December 27, 2023—fourteen days after the "Bad Faith" Claim Briefing Order—Landfall filed two motions for attorney fees: (1) a memorandum motion[2] for attorney fees pursuant to Virginia Code § 38.2-209, ECF No. 233 ("First Motion"), and (2) a "Motion for Attorney Fees Pursuant to 28 U.S.C. § 1927 and This Court's Inherent Authority," ECF No. 234 ("Second Motion"), and a supporting brief, ECF No. 235. Landfall did not submit any declarations or affidavits with those filings. Fidelity filed its responses in opposition to those motions on January 10, 2024. ECF Nos. 236, 237. On January 16, 2024, Landfall filed a "Supplement to Plaintiff's Memorandum on the Issue of Bad Faith [ a]nd Declaration of Plaintiff's Counsel." ECF No. 238. The following day, Landfall filed its respective replies. ECF Nos. 239, 240.

## II. LEGAL STANDARD

### A. Attorney Fees Pursuant to Virginia Code § 38.2-209

Virginia Code § 38.2-209 provides, in pertinent part:

> [I]n any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or fidelity bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

Section 38.2-209 merely "operates as a fee-shifting statute," *Selective Ins. Co. of the Se. v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 418 (E.D. Va. 2020), providing "only . . . a source of recovery of costs and attorney's fees once a judgment is entered against the insurer," *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 655 (E.D. Va. 2009). The

---

[2] *See supra* n.1.

statute "is both punitive and remedial in nature. It is designed to punish an insurer guilty of bad faith in denying coverage or withholding payment and to reimburse an insured who has been compelled by the insurer's bad-faith conduct to incur the expense of litigation." *CUNA Mut. Ins. Soc'y v. Norman*, 375 S.E.2d 724, 726 (Va. 1989). The fee applicant thus must demonstrate that the insurer acted in bad faith. *Id.* at 727. When evaluating the conduct of an insurer for bad faith, courts should apply a "reasonableness standard" and consider:

> (1) whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; (2) whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; (3) whether the evidence discovered reasonably supports a denial of liability; (4) whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and (5) whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

*Id.*

"A prevailing party entitled by law to an award of attorney fees has the burden of proving 'that the requested fees are reasonable and that they were necessary.'" *Sidya v. World Telecom Exch. Commc'ns, LLC*, 870 S.E.2d 199, 208 (Va. 2022) (quoting *West Square, LLC v. Commc'n Techs., Inc.*, 649 S.E.2d 698, 702 (Va. 2007)). To determine whether the fee applicant

> has established a *prima facie* case of reasonableness, a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

*Chawla v. BurgerBusters, Inc.*, 499 S.E.2d 829, 833 (Va. 1998). "As in all cases where attorney's fees are recoverable pursuant to statute, the reasonableness of the fees requested must be determined by the evidence," and the party seeking the fees necessarily bears the burden to adduce such evidence. *RF & P Corp. v. Little*, 440 S.E.2d 908, 917 (Va. 1994); *see, e.g.*, *Tazewell Oil Co. v. United Va. Bank/Crestar Bank*, 413 S.E.2d 611, 621 (Va. 1992); *Mullins v. Richlands Nat'l*

4

*Bank*, 403 S.E.2d 334, 335 (Va. 1991); *Plantation House Ltd. P'ship v. Anderson & Strudwick*, 45 Va. Cir. 556 (Va. Cir. Ct. 1998) (citing *Mullins*, 403 S.E.2d 334) ("The party seeking reasonable attorney's fees must prove the reasonableness of the amount sought by introducing evidence in support of the claim."). For that reason, claims for attorney fees pursuant to Virginia statutes necessarily fail where the fee applicant fails to properly provide evidence of the requested fees and their reasonableness. *See, e.g.*, *Skoglund v. Ideal Elecs. Sec.*, 45 Va. Cir. 250 (Va. Cir. Ct. 1998) ("No affidavits or time sheets have been submitted as evidence of the proper amount of attorney's fees to award. For that reason, attorney's fees will not be awarded in this case."); *Yount v. Hahn*, 13 Va. Cir. 296 (Va. Cir. Ct. 1988) ("There was no evidence introduced in support of the claim for attorney fees and only in plaintiff's pleading is there an amount set out and claimed to be so due. Without evidence to support it this claim must fail . . . ."); *In re Chen*, 351 B.R. 355, 362 n.8 (Bankr. E.D. Va. 2006) ("Even if the [movant] were entitled to its attorney's fees under [the Virginia statute], none would have been awarded. It presented no evidence as to the amount of attorney's fees sought or the reasonableness of the amount. . . . [T]he burden of proof is on the [movant] to show the reasonableness of its alleged attorney's fees. Thus, even if the [movant] were entitled to its reasonable attorney's fees, its failure to put forth any evidence of the reasonableness of the fees asserted bars any recovery.").

**B. Attorney Fees Pursuant to 28 U.S.C. § 1927 and The Court's Inherent Authority**[3]

Section 1927 of Title 28 of the U.S. Code states, in pertinent part:

Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and

---

[3] These are both federal sources for fees. This is a diversity case, so this Court is required to apply the substantive law of the forum state, Virginia. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). The right to an award of attorney fees is considered a matter of substantive law. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975). The parties do not brief *Erie* matters; they both assume that these federal attorney fees sources can apply in this case. For purposes of this Motion, the Court can assume without deciding that these sources are available to Plaintiff here.

> vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Section 1927 is concerned with remedying abuse of court process," *Stradtman v. Republic Servs., Inc.*, 121 F. Supp. 3d 578, 580 (E.D. Va. 2015), solely "focus[ing] on the conduct of the litigation and not on its merits," *Debauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999). "If an attorney needlessly multiplies a proceeding, then he may be liable for the costs of such extraneous litigation." *Stradtman*, 121 F. Supp. 3d at 580 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756 n.3 (1980)). A finding of bad faith is a prerequisite to an award of attorneys' fees under § 1927. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991). The decision to award fees under § 1927 is committed to the discretion of the district court. *Stradtman*, 121 F. Supp. 3d at 581.

In addition to a district court's discretion to award attorney fees under § 1927, a court "has the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has 'acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'" *Williams v. Fam. Dollar Servs., Inc.*, 327 F. Supp. 2d 582, 585 (E.D. Va. 2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "While this power 'ought to be exercised with great caution,' it is . . . 'incidental to all Courts.'" *Royal Ins. v. Lynnhaven Marine Boatel, Inc.*, 216 F. Supp. 2d 562, 567 (E.D. Va. 2002) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "Thus, if the court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' then it can assess attorneys' fees against the responsible party." *Williams*, 327 F. Supp. 2d at 585 (quoting *Royal Ins.*, 216 F. Supp. 2d at 567). The district court "can invoke its inherent authority to sanction an attorney's conduct 'even if procedural rules exist which sanction the same conduct.'" *Stradtman*, 121 F. Supp. 3d at 581 (quoting *Chambers*, 501 U.S. at 49). The decision to award fees pursuant to the court's inherent

authority is committed to the district court's sound discretion. *Williams*, 327 F. Supp. 2d at 585 (citing *Blue v. U.S. Dep't of the Army*, 914 F.2d 525, 546 (4th Cir. 1990)).

"Under both § 1927 and the court's inherent power, the burden of demonstrating an entitlement to attorneys' fees rests on the moving party." *Stradtman*, 121 F. Supp. 3d at 581 (citing *Morris v. Wachovia Secs., Inc.*, 448 F.3d 268, 284 (4th Cir. 2006)). In addition to establishing entitlement, the fee applicant "bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012). "The touchstone of any award of attorneys' fees and expenses is reasonableness." *Perry v. Isle of Wight Cnty.*, 311 F. Supp. 3d 751, 755 (E.D. Va. 2018). "The fee applicant bears the burden of demonstrating the reasonableness of its fee request . . . and of 'providing sufficient detail in [its] records to explain and support [its] requests for fees and costs.'" *Id.* (quoting *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012)). "Inadequate documentation is a basis for . . . denying a fee award." *E.E.O.C. v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988). The district court has discretion in determining the amount of a fee award. *Perry v. Bartlett*, 231 F.3d 155, 164 (4th Cir. 2000).

### III. DISCUSSION

Across its two motions, Plaintiff seeks attorney fees under (1) Virginia Code § 38.2-209, for all attorney fees (Plaintiff's "First Motion"); and (2) 28 U.S.C. § 1927 and this Court's inherent power, for the fees incurred as a result of Defendant's allegedly vexatious, bad faith litigation in this case (Plaintiff's "Second Motion"). The Court cannot grant either motion.

**A. Attorney Fees Pursuant to Virginia Code § 38.2-209**

In seeking attorney fees pursuant to Virginia Code § 38.2-209, Plaintiff had the burden to adduce evidence to support its fee request. But Plaintiff failed to timely provide such evidence.

7

Thus, even if Plaintiff could show Defendant had denied Plaintiff's insurance claim in "bad faith" within the meaning of § 38.2-209, the Court would have no choice but deny Plaintiff's motion.

Federal Rule of Civil Procedure 6(c)(2) reads in relevant part: "Any affidavit supporting a motion must be served with the motion." Rule 6(c)(2) thus "requires the supporting affidavits," declarations, or other supporting documents[4] to "be filed simultaneously with the motion it supports, affording the opposing party an opportunity to address the motion fully and squarely on its merits." *McGinnis v. Se. Anesthesia Assocs.*, 161 F.R.D. 41, 42 (W.D.N.C. 1995) (footnote omitted). Put simply, under the rule, "a party may not file a motion unsupported by any evidence only to spring the evidence on the opposing party on a later date." *Id.*

Plaintiff filed this motion but did not attach any declarations, affidavits, timesheets, invoices, or anything of the sort. *See generally* First Mot., ECF No. 233. In fact, Plaintiff did not even identify the specific amount of fees it wanted awarded. *See generally id.*

In its Response, though not citing Rule 6, Defendant gets to the Rule's point. Defendant argues that Plaintiff's request for an attorney fee award under Virginia Code § 38.2-209 "should be denied because [Plaintiff] has submitted no evidentiary support for that award" and that the Court "should not . . . allow [Plaintiff] to try to cure this fatal defect with belated submissions on reply." Def.'s Resp. to First Mot. 17–18, ECF No. 236.

Six days after Defendant filed its Response—twenty days after Plaintiff's original filing—Plaintiff finally submitted evidence, filing the "Supplement to Plaintiff's Memorandum on the Issue of Bad Faith [ a]nd Declaration of Plaintiff's Counsel." ECF No. 238 (hereinafter, "Supplement and Declaration"). The invoices Plaintiff attached to the Supplement and Declaration

---

[4] "Although [Rule] 6(c)(2) refers to 'affidavits,' . . . that language includes other documents in support of the motion." *Masters v. Lin*, 2015 WL 12830505, at *6 (D.S.C. Jan. 23, 2015) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 91–92 (4th Cir. 1993)).

8

are dated January 15, 2024, *see* ECF Nos. 238-1, -2, -3, the day before Plaintiff filed the Supplement and Declaration.

By failing to file any evidence when it filed its motion, Plaintiff failed to comply with Rule 6(c)(2). The post-response Supplement and Declaration, filed just a day before Plaintiff filed its reply brief, was too late under the Federal Rules.[5] As such, Plaintiff has no timely filed evidence to support its motion. So, even assuming *arguendo* that Plaintiff is entitled to attorney fees under Virginia Code § 38.2-209, the Court cannot conclude that Plaintiff met its burden to show that any requested fees would be "reasonable" and thus recoverable.

But even if Rule 6(c)(2) did not render Plaintiff's evidence untimely and doom its First Motion, this Court's December 13, 2023 "Bad Faith" Claim Briefing Order would. *See* ECF No. 231. The Court directed Plaintiff to "file a brief *and any supporting documents* as are appropriate" to support its "bad faith" attorney fees claim "within fourteen (14) days after entry of th[at] Order." *Id.* (emphasis added). Plaintiff did not file its supporting documents until thirty-four (34) days after the "Bad Faith" Claim Briefing Order.

Plaintiff says that it "did not interpret this Court's order to require the submission of bills but rather only memoranda of law regarding whether this Court should find the denial of coverage in bad faith." Supplement and Declaration 1. But this Court "[is] in the best position to interpret

---

[5] There is no Rule 6(c)(2) problem with a movant filing documents with their reply when the documents only support the reply, *see, e.g.*, *McGinnis*, 161 F.R.D. at 42 n.1, or when the documents do not constitute "new evidence" and only serve to address an issue raised for the first time by the non-movant in their response, *see, e.g.*, *Ilozor v. Hampton Univ.*, 2007 WL 1310179, at *14 (E.D. Va. May 3, 2007) (citing *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1456–57 (E.D. Wis. 1993)), *aff'd*, 286 F. App'x 834 (4th Cir. 2008). Neither off-ramp applies here. On the very first page of the Supplement and Declaration, Plaintiff said it was "supplement[ing] *its prior memorandum* with th[e] declaration[.]" Supplement and Declaration 1 (emphasis added). So Plaintiff recognized that the late-filed evidence was intended to support its initial filing, not its reply. Plaintiff did not file *any* evidence with its initial filing, necessarily making the Supplement and Declaration "new evidence" that is late and thus improper under Rule 6(c)(2). *Cf. Int'l Techs. Consultants, Inc. v. Stewart*, 2012 WL 12991059, at *2 (E.D. Mich. Aug. 21, 2012) (finding no Rule 6(c)(2) problem with an affidavit filed after the motion for attorney fees "because the substantive information [in that late-filed affidavit] about the hours spent by defendant's attorneys in th[at] matter was [already] included in Exhibit N to the motion for attorney fees").

[its] own orders." *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004). The Court gave Plaintiff fourteen days to file a brief and all "appropriate" "supporting documents" to support its "bad faith" claim. Plaintiff's "bad faith" claim has always been one for attorney fees. *See* Compl. 12, ¶¶ 1–3, ECF No. 1. A party seeking attorney fees under Virginia law must submit documentary evidence to support a claim for fees. So, the Court's "Bad Faith" Briefing Order required Plaintiff to file evidence—e.g., timesheets and bills—within fourteen days as well. Plaintiff did not do so.[6] If Plaintiff had any doubts about what this Court's "Bad Faith" Claim Briefing Order required, it should have sought clarification from the Court. Plaintiff has failed to meet its burden to show it can recover attorney fees under Virginia law.

**B. Attorney Fees Pursuant to 28 U.S.C. § 1927 and The Court's Inherent Authority**

The Court turns to Plaintiff's Second Motion, its motion for fees under 28 U.S.C. § 1927 and this Court's inherent power. For two reasons, even if the Court assumes that Plaintiff had shown entitlement to fees under these authorities, the Court cannot conclude that Plaintiff has met its burden of proof to demonstrate that any requested fee is reasonable. So the Court must deny this Second Motion as well.

The first reason the Court must deny Plaintiff's Second Motion is that Plaintiff did not contemporaneously file any affidavits, declarations, or any other evidence with this motion to support its fee request. *See generally* Second Mot., ECF No. 234. As the Court has already explained, this failure means Plaintiff failed to comply with Federal Rule of Civil Procedure

---

[6] In its First Motion, Plaintiff asked the Court to "hold that Fidelity acted in bad faith" and "take evidence on the amount of [its] attorney's fees." First Mot. 12. It is unclear to the Court why Plaintiff believed it did not need to provide evidence with its First Motion. Especially because, in the First Motion, Plaintiff specifically stated that, in its view, it is "entitled to all attorney's fees," *id.* (emphasis omitted), begging the question: "What fees?" Even more confusing is the fact that, in its First Motion, Plaintiff cites caselaw that analyzes both (1) the "bad faith" question and (2) reasonableness of the fee request at the same procedural posture—on a single motion for attorney fees pursuant to Virginia Code § 38.2-209. *See Carolina Cas. Ins. Co. v. Draper & Goldberg, PLLC*, 369 F. Supp. 2d 667, 672–75 (E.D. Va. 2004) (finding no bad faith and thus not needing to address the reasonableness of the fees requested), *cited in* First Mot. 2.

10

6(c)(2), *see* discussion *infra* Part IV.A; *cf.* Def.'s Resp. to Second Mot. 11, ECF No. 237 (arguing, as it did as to Plaintiff's First Motion, that Plaintiff's Second Motion "should be denied because [Plaintiff] has submitted no evidentiary support for that award" and that the Court "should not . . . allow [Plaintiff] to try to cure this fatal defect with belated submissions on reply"),[7] and leaves Plaintiff with no timely filed evidence to support this motion. Thus, even assuming *arguendo* that Plaintiff can establish that Defendant engaged in vexatious, bad faith litigation such that Plaintiff is entitled to attorney fees under 28 U.S.C. § 1927 and/or this Court's inherent authority, the Court cannot say that Plaintiff met its burden to prove, with evidence, what the fees incurred as a result of Defendant's allegedly bad faith litigation were and that those fees are reasonable and thus recoverable. Plaintiff has not properly, timely provided documentation of the sought fees at all, let alone their reasonableness. Plaintiff cannot meet its burden, and so the Court cannot grant this motion.

But even if Plaintiff's evidence were timely filed, the Court would deny Plaintiff's Second Motion for a second reason: the evidence itself falls far short of satisfying Plaintiff's burden to demonstrate the reasonableness of the fee requested for its attorney's work related to Defendant's

---

[7] In addition to Rule 6(c)(2), Plaintiff effectively conceded Defendant's argument that the Court should not allow Plaintiff to file late evidence here, because Plaintiff never meaningfully responded to the argument as it relates to this Second Motion. Plaintiff's only justification for the late filing of its evidence came in its Supplement and Declaration, but that justification was filed with respect to Plaintiff's First Motion for attorney fees under Virginia Code § 38.2-209, and thus is unrelated to Plaintiff's request attorney fees pursuant to 28 U.S.C. § 1927 and this Court's inherent power in this Second Motion.

To justify not filing evidence initially, all Plaintiff's counsel said was that "Plaintiff's counsel did not interpret this Court's ["Bad Faith" Claim Briefing O]rder to require the submission of bills but rather only memoranda of law regarding whether this Court should find the denial of coverage in bad faith." Supplement and Declaration 1. But the issue of whether Defendant denied coverage in bad faith is of no moment on this Second Motion. The "bad faith" with which § 1927 and this Court's inherent power concern themselves is bad faith practices and conduct *during the litigation*. Any question of bad faith in denying Plaintiff's original insurance claim—that is, bad faith *before* the litigation—is solely a question for whether Plaintiff is entitled to attorney fees under Virginia Code § 38.2-209. The "Bad Faith" Claim Briefing Order had nothing to do with this Second Motion, so any argument based on a (mis)reading of that Order is entirely unresponsive to the timing issues here. Thus, since Plaintiff did not respond to Defendant's argument that Plaintiff cannot file evidence late to support *this* motion, or otherwise justify filing late evidence as it relates to this motion, Plaintiff has essentially conceded the argument. *Cf. Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to this argument, Plaintiff concedes the point.").

allegedly vexatious litigation practices. The Court specifically addresses whether Plaintiff has carried its burden of proof to show that the hourly rate sought for this work is reasonable, and the Court concludes that Plaintiff has not met that burden.[8]

The Fourth Circuit places the burden of proof on "the fee applicant to establish the reasonableness of a requested rate"—i.e., to show that the rate falls within the prevailing market rate in the relevant community for that type of work. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Though one of multiple things the fee applicant must prove, the hourly rate is "generally . . . the critical inquiry in setting the reasonable fee[.]" *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (quoting *Plyler*, 902 F.2d at 277). The applicant has "the burden to make out the reasonableness of [its] hourly rate with specific evidence." *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 230 n.12 (4th Cir. 2009). "Affidavits from the prevailing party alone are not sufficient." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (citing *Plyler*, 902 F.2d at 277); *see also Mostaed v. Crawford*, 2012 WL 3947978, at *5 (E.D. Va. Sept. 10, 2012) ("To carry the burden, a plaintiff may not simply rely on his or her

---

[8] To determine a reasonable fee, the Fourth Circuit directs district courts to first calculate the "lodestar" figure by multiplying the "reasonable hourly rate" by the "hours reasonably expended" in light of the factors enumerated in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). The *Johnson*/*Barber* factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987). Only after calculating the lodestar figure can the district court proceed to subtracting fees for hours spent on unsuccessful claims unrelated to successful ones and awarding some percentage of the remaining amount, depending on the degree of success achieved. *Grissom*, 549 F.3d at 321. For the reasons explained in this section, the Court need not address all of these matters at this time.

own attorneys' report and analysis of their work."). Rather, in addition to the attorney's own affidavits, the fee applicant should submit things such as "affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the market.'" *Project Vote*, 887 F. Supp. 2d at 710 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)). A district court "abuse[s] its discretion by awarding the hourly rates requested by [the fee applicant] in the absence of 'satisfactory specific evidence of the prevailing market rates[.]'" *Robinson*, 560 F. 3d at 245 (quoting *Plyler*, 902 F.2d at 277).

In support of its burden to establish that the requested hourly rate was reasonable and within the prevailing market rate of attorney fees in the relevant community—here, the Eastern District of Virginia[9]—for this work, all Plaintiff provided was (1) its attorney's declaration of his billing rate and his sworn "belie[f]" that his rate "is a reasonable rate for complex commercial litigation in the Richmond area;" (2) a reference in its attorney's declaration to the "Laffey Matrix" as an "applicable matri[x] and guidelin[e] . . . in the Eastern District" in this context; and (3) citations to "awards of attorneys' fees in similar cases." Supplement and Declaration 3, 8–9. None of this constitutes the requisite "satisfactory specific evidence of the prevailing market rates[.]" *Plyler*, 902 F.2d at 277.

To begin with, the Fourth Circuit and this Court have repeatedly held that the Laffey Matrix is not reliable, specific evidence of the market rate in the Eastern District of Virginia. *See, e.g.*, *Grissom*, 549 F.3d at 323; *Robinson*, 560 F.3d at 245; *Project Vote*, 887 F. Supp. 2d at 712 (citing *Grissom*, 549 F.3d at 323). Next, Plaintiff's purported "similar cases" fail because (i) none of

---

[9] "The relevant community for determining the market rate is ordinarily the district where the case was tried." *Project Vote*, 887 F. Supp. 2d at 710 (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)).

those cases are from within this district and (ii) Plaintiff concedes that "th[o]se cases do not develop a common theme" that would help in "determining the entitlement of an insured to recover attorney's fees from its title insurer." Supplement and Declaration 9.

All that leaves Plaintiff with is its own attorney's declaration. That is not enough. It is well-settled that an attorney's own sworn statements are insufficient to meet the movant's burden of proof to establish the prevailing market rate. *See, e.g.*, *Robinson*, 560 F.3d at 246 (citing *Plyler*, 902 F.2d at 277); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates" align with prevailing rates in the relevant market).

For these reasons, even if Plaintiff had demonstrated that Defendant's litigation conduct triggers 28 U.S.C. § 1927 and/or this Court's inherent powers and would permit the Court to award fees, the Court could not find that Plaintiff met its burden of proof to demonstrate that the hourly rate, and thus the requested fee itself, is reasonable. Plaintiff's rate request "is fundamentally flawed: . . . it lacks any independent evidence of its reasonableness[.]" *Mostaed*, 2012 WL 3947978, at *1. This flaw "justif[ies] a denial of all fees" requested. *Id.* at *7. So even if Plaintiff had timely filed its evidence and were legally entitled to an award of fees, the Court would, "[i]n its discretion, . . . den[y] the motion entirely." *Id.* at *1; *see also Nutramax Lab'ys, Inc. v. Manna Pro Prod., LLC*, 2017 WL 3473990, at *9 (D.S.C. Aug. 14, 2017) ("Because [the movant] fails to provide satisfactory specific evidence of the prevailing market rate in [the community] for [the type of work at issue], the court is compelled to deny its [] motion for attorneys' fees.").[10]

---

[10] No party asks the Court to determine on its own the reasonable rate to apply in this matter, and the Court will not do so. *Cf. Nutramax Lab'ys*, 2017 WL 3473990, at *9–11 (declining to exercise its discretion to determine the prevailing rate based on its own knowledge, despite a party suggesting that the court do so).

14

## IV. CONCLUSION

For the foregoing reasons, the Court will deny (1) Plaintiff's motion for "bad faith" attorney fees pursuant to Virginia Code § 38.2-209; and (2) Plaintiff's Motion for Attorney Fees Pursuant to 28 U.S.C. § 1927 and this Court's Inherent Authority.

An appropriate Order will follow.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: April 26, 2024